[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR APPORTIONMENT AND MOTION FOR DETERMINATION
After a jury verdict in this case, the plaintiff has filed a Motion for Determination in which he asks the court to determine whether the intervening plaintiff, Carolina Freight, is entitled to any portion of the verdict. Carolina Freight has filed a Motion for Apportionment in which it seeks an apportionment of the verdict to reimburse it for workers' compensation benefits paid and payable to the plaintiff.
On September 9, 1987 Paul Saunders was involved in a motor vehicle accident in the course of his employment. As a result of the accident he collected $60,597.26 in workers' compensation benefits from his employer, Carolina Freight. The total amount of compensation benefits is comprised of $11,315.63 for medical bills, $41,643.83 for temporary total disability, and $7,639.80 for permanent partial disability.
Paul Saunders brought this action against Earl C. Blackman, the driver of the other vehicle involved in the accident and on June 2, 1992 was awarded $99,291.00 by a jury. The composition of the verdict was determined by the provisions known as Tort Reform I, Public Act No. 86-338. Under Tort Reform I a jury must apportion a verdict in four categories: past economic damages; past non-economic damages; future economic damages; and future non-economic damages. In this case the verdict was broken down into those four categories as follows: $26,291 for past economic damages; $20,000 for past non-economic damages; $31,000 for future economic damages; and $22,000 for future non-economic damages.
Paul Saunders argues that Carolina Freight's reimbursement for amounts paid to him as workers' compensation should be limited to only that amount of the verdict designated as past economic damages. In support of this argument he claims that CT Page 9801 payments made pursuant to 31-307 of the Connecticut General Statutes for temporary total workers' compensation benefits are made only to reimburse an injured employee for his lost wages. Such payments are not made to reimburse the employee for pain and suffering or any other non-economic damage. Therefore, the plaintiff argues, it would be unfair to permit the employer to obtain reimbursement for amounts paid for temporary total benefits from any component of the verdict awarded for non-economic damages or from future economic damages.
Carolina Freight claims that there is no legal basis found in Tort Reform I or the workers' compensation statutes for limiting its recovery in the manner claimed by Saunders.
Connecticut General Statutes 31-293 provides that the claim of the employer to damages recovered by an injured employee shall take precedence over that of the injured employee and further provides:
 If the damages, after deducting the employee's expenses as provided above, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee.
Section 31-293 uses the term "damages" and clearly does not contain any provision for apportioning damages based on their economic or non-economic nature. If the legislature had intended Tort Reform I to affect the payback of workers' compensation liens it could have specifically so provided. The legislature in enacting a statute is presumed to know the status of the law. State v. Dabkowski, 199 Conn. 195, 201,506 A.2d 118 (1986). Moreover, Connecticut General Statutes52-572(h)(2)(i), a portion of the Tort Reform statute, specifically excludes subrogation claims from the effects of Tort Reform. An employer's right to recover from damages awarded to an employee has been characterized by the Connecticut Supreme Court as a statutory right of subrogation. Dwight Building Co. v. Stamford Housewrecking Co., 193 Conn. 297, 301,476 A.2d 568 (1984).
The prevailing rule in the United States refuses to place an employee's third-party recovery outside the reach of the employer's lien on the ground that some or all of it was CT Page 9802 accounted for by damage for pain and suffering. 2A Larson, The Law of Workers' Compensation, 74.35, pp. 14-541 — 14-549; United States v. Lorenzetti, 467 U.S. 167, 104 S.Ct. 2284, 81 Ed.2d 734 (1984); Green v. U.S. Department of Labor, 775 F.2d 964
(8th Cir. 1985); Hendry v. Industrial Comm'n., 112 Ariz. 108,538 P.2d 382 (1975).
In United States v. Lorenzetti, supra, an injured federal employee received medical benefits, and income benefits for lost wages under the Federal Employees' Compensation Act. He sued a third party under a Pennsylvania no-fault statute in an action in which he could and did recover only for non-economic losses such as pain and suffering. The United States Supreme Court stated that the "prevailing rule under state workmen's compensation statute is that an employer is fully entitled to be reimbursed from third-party recoveries for pain and suffering, even when the portion of an award attributable to pain and suffering is clearly separable from the portion attributable to economic losses."
Section 31-293 expresses a clear intent that an employer's reimbursement for amounts paid to an employee are to be taken from the total amount of damages. When a statute expresses an intent in clear and unambiguous language, courts cannot recognize claimed equities which appear to run counter to the ruling of the statute. Olszewski v. State Employees' Retirement Commission, 144 Conn. 322, 326, 130 A.2d 801 (1957).
Saunders argues that permitting Carolina Freight to recover from anything other than past economic damages is "utterly unfair." By the same token, Carolina Freight could argue that it is unfair to limit its recovery where it has paid Saunders for lost wages in an amount greater than that awarded by the jury. In this case Saunders presented evidence that his lost wages as a result of the accident were $139,118.60 and that his past medical bills were $12,033.02, for total past economic damages of $151,151.62. The jury awarded only $26,291 for past economic damages. Carolina Freight paid Saunders $41,643.83 in temporary total disability payments which are made (generally at the rate of two thirds of an employee's compensation) for an employee's inability to work.
Saunders also argues that payments made to him for permanent partial disability are, essentially, payments for economic damages and, therefore, reimbursement for those CT Page 9803 payments should only be allowed from the past economic damages component of the jury award. Saunders' characterization of permanent partial disability compensation payments is not accurate. While such payments are calculated based on an employee's compensation rate, they are made to reimburse an employee for physical disability, a type of non-economic damages. Under 31-308(b) of the Connecticut General Statutes an employee may receive payments for permanent partial disability in addition to payments for temporary total disability. Therefore, such payments are not paid to an employee to reimburse him for lost wages.
For the reasons set forth above, there is no basis to limit Carolina Freight's recovery to only that portion of the verdict which was awarded for past economic damages. Carolina Freight is entitled to reimbursement from the entire damage award reduced by the amount of legal fees, $33,907. and other reasonable costs incurred by the plaintiff, $10,947.29, or a total amount of $55,246.71 pursuant to 31-293.
The total amount of the verdict is apportioned as follows: $44,044.29 to the plaintiff for legal fees and expenses, $55,246.71 to Carolina Freight as reimbursement for workers' compensation payments made.
BY THE COURT,
AURIGEMMA, J.