FRANK W. FOX ET AL. *v.* ZONING BOARD OF APPEALS OF
THE TOWN OF WEST HARTFORD ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued November 6—decided December 24, 1958

*Arthur M. Lewis,* for the appellants (plaintiffs).

*Peter B. Sullivan,* for the appellee (defendant Bailey-Gates), with whom was *Samuel Freed,* assistant corporation counsel, for the appellee (named defendant).

KING, J. Dr. Charles S. Bailey-Gates, a dentist, desired to erect a building in West Hartford. He intended to use the first floor for dental offices, at least in part for his own practice, and the second floor as a four- or five-room residence apartment which he did not intend personally to occupy. A two-family dwelling house, presently on the property, is a nonconforming use in a residence B zone[1] and is to be demolished, and the new building is to be

---

[1] "[West Hartford Zoning Regs. (1951)] Section 4. RESIDENCE DISTRICT. PERMITTED USES.

"A. Within an 'AAA', 'AA', 'A' and 'B' area district no building or premises shall be used and no building shall be erected or structurally altered which is arranged, intended or designed to be used for other than a single family residence together with such other buildings as are ordinarily appurtenant thereto.

"B. In any other residence district, no building or premises shall be used, and no building shall be erected or structurally altered which is arranged, intended or designed to be used, for other than one or more of the following uses: . . . (7) Within a D area district only, the office of a physician, dentist or surgeon whether or not said office is an accessory use in the dwelling or apartment used by such physician, dentist or surgeon as his private residence, provided said office shall be confined to the first floor of any building and provided further that no more than two such designated professional men shall engage in practice in any one building."

erected in its place. The plaintiffs own property one lot away. Dr. Bailey-Gates applied to the zoning board of appeals for a special exception to permit the erection of the proposed structure. The board granted the application "in accordance with plot plans, floor plan of proposed dental offices, and front elevation of building on file," stating in its decision: "After viewing these premises, the Board feels that granting this exception will be in the interest of public convenience and welfare, and will not substantially injure the surrounding property." The plaintiffs appealed from the action of the board in granting the special exception.

At the outset it must be borne in mind that this case involves, not a variance, but an exception. "[T]he conditions permitting an exception must be found in the [zoning] regulations themselves, and these conditions, if any, may not be altered." *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 636, 109 A.2d 256. "[A] variance is authority extended to the owner to use his property in a manner forbidden by the zoning enactment, while an exception allows him to put his property to a use which the enactment expressly permits." Ibid.; *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals,* 140 Conn. 527, 531, 102 A.2d 316. The authority of the defendant board to grant exceptions is found in § 18 (A) of the zoning ordinance, which provides: "When in its judgment the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured, the Board of Appeals may in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, authorize special exceptions to the regulations herein established as

follows: . . . ." Of the five listed subdivisions, but two are pertinent. These are subdivision (3), under which the board acted, and subdivision (5), which the plaintiffs claim precluded action under subdivision (3).[2]

The zoning ordinance, including, of course, § 18 (A) thereof, providing for special exceptions, is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed to make its intention manifest. The actual intention, as a state of mind, of the members of a legislative body is immaterial, even if it were ascertainable. *Park Regional Corporation* v. *Town Plan & Zoning Commission*, 144 Conn. 677, 682, 136 A.2d 785. An ordinance "ought to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant." *State ex rel. Rourke* v. *Barbieri*, 139 Conn. 203, 211, 91 A.2d 773.

The plaintiffs claim that § 4 of the ordinance, relating to permitted uses in a residence zone, controls § 18 (A), relating to the granting of special exceptions. In the first place, there would be no

---

[2] "Section 18. REVIEW BY BOARD OF APPEALS. A. Special Exceptions. . . . (3) The location in any use district of a state or municipal building, church, school, college building, railway, farming, nursery, greenhouse, truck gardening, private club, philanthropic or eleemosynary institution, boat house, office building, public utility, ice storage, aviation field, public park or playground, public recreation building, stadium or athletic field, golf course, polo field, cemetery, penal institution, sanitarium for the insane or feebleminded, water supply, sewage disposal or treatment plant, garbage disposal plant, refuse dump, stone quarry, gravel pit or sand pit; . . . (5) In a residence district, except a D area district, the location of the office of a physician, dentist or surgeon as an accessory use in the dwelling or apartment used by such physician, dentist or surgeon as his private residence, and in any residence district the location of the office of any other professional person as an accessory use in the dwelling or apartment used by said professional person as his private residence."

occasion to apply for an exception if a use was in conformity with the general regulations governing permitted uses in the zone in question. Secondly, subsection (B) of § 4, by its express terms, applies only to residence zones other than "AAA," "AA," "A" and "B," and since the property in this case is located in a residence B zone, subsection (B) can have no application to this case. Even if that subsection is susceptible of an interpretation which in certain factual situations might lead to a result inconsistent with that reached under subdivision (3) of § 18 (A), we would not be warranted in adopting a construction which would distort the clear meaning of § 18 (A). The remedy, if any is needed, is in a clarification of the language of the ordinance.

The plaintiffs' main claim seems to be that if subdivision (3) of § 18 (A) is construed as authorizing the granting of an exception to permit an office building in any zone, then any exception which could be authorized under subdivision (5) could also be authorized under subdivision (3), so that subdivision (5) would serve no purpose whatsoever. This claim involves a patent non sequitur and is unsound. Section (5) applies only to a building of which the main, principal and dominant use is residential but which has an accessory use as an office of a professional person who resides in the building. The subject matter of subdivision (5) is not professional uses of an office building but professional accessory uses of a residence building. 58 Am. Jur. 969, § 46. An accessory use is a use which is customary in the case of a permitted use and incidental to it. 1 Yokley, Zoning Law & Practice (2d Ed.) § 64 & Ann. Cum. Sup. An accessory use under a zoning law is a use which is dependent on or pertains to the principal or main use. 58 Am. Jur. 969, § 46, & Ann. Cum.

Sup. In other words, subdivision (5) is applicable only where the permitted use of the building involved is residential and the accessory use is made by a resident of the building. It has no application to this case, and the board could not have legally acted under it, since Dr. Bailey-Gates has no intention of residing in the building. On the other hand, an office building has not, and in its inherent nature cannot have, as its main, principal and dominant use, that of a residence building. Its main, principal and dominant use must be for offices. Otherwise, it would not be an office building. An office building, not a residence building, is embraced within the provisions of subdivision (3). Whether a building is an office building or a residence building is a question of fact, and under certain circumstances may be a close question. But the mere fact that a building contains both offices and an occupied residential apartment does not, alone, conclusively establish that the building is not an office building. See note, 55 A.L.R.2d 398, 408. The main, principal and dominant use of a building determines its character.

The basic issue before the court below was whether the plaintiffs proved that the action of the board of appeals was illegal. *Guerriero* v. *Galasso,* 144 Conn. 600, 606, 136 A.2d 497; *Jaffe* v. *State Department of Health,* 135 Conn. 339, 353, 64 A.2d 330. Necessarily involved in the board's decision was its finding that the proposed structure, notwithstanding the second-floor residence apartment, was an office building. Since Dr. Bailey-Gates had no intention of living in the proposed building, clearly it was to be erected as a business venture. There was no evidence as to the fair rental value of the contemplated first-floor dental quarters or the contemplated second-floor residence apartment. This being so, it

cannot be said that the board could not reasonably conclude, as it obviously did, that the chief source of return on the investment would be the first-floor dental offices, whether personally used by Dr. Bailey-Gates or rented in whole or in part to other dentists, and that the rental value of these offices would substantially exceed that of the second-floor residence apartment. This would go far to indicate that the main, principal and dominant use of the building was as an office building. The plans do not show the floor area of the second-floor apartment and there is nothing to indicate that this area would be substantially greater than, or even as great as, the area of the dental offices. This also is consistent with the conclusion of the board as to the main, principal and dominant use of the building. The plaintiffs claim that a residence is customarily occupied twenty-four hours a day each day of the week, whereas an office is customarily occupied eight hours or less on any one day and on no more than five days in any one week. From this they argue that any building containing offices and one or more residences must have, as its main, principal and dominant use, that of a residence. The plaintiffs' argument is more ingenious than persuasive. Its invalidity is especially obvious where, as here, the owner intends to use no part of a building for a home, and its erection is a business venture. The board was not required to determine the character of this building solely on the basis of the percentages of time the office and residence portions would probably be occupied by human beings.

We find nothing to indicate that the board of appeals acted improperly, arbitrarily or illegally in deciding that the proposed building was an office building as that term is used in subdivision (3) of

§ 18 (A) of the ordinance. This being so, the board, in granting any special exception, would necessarily be acting under subdivision (3) and would have no concern with subdivision (5).

The plaintiffs also claim that § 18 (A) was unauthorized by the special act from which the town derived its zoning powers and in any event did not confer on the board of appeals original jurisdiction to grant a special exception. Section 18 (A) clearly gives that jurisdiction to the board. Section 1 of the special act authorizes the town council to "regulate . . . the use of buildings, structures and land for trade, industry, residence or other purposes." 19 Spec. Laws 934. Section 4 states in part: "Said town council shall provide for the manner in which such regulations . . . shall be respectively enforced and established and amended or changed." 22 id. 473. Section 8 provides that the board of appeals shall "hear and decide all matters referred to it or upon which it shall be required to pass" under a zoning ordinance. 19 id. 936. These provisions, taken together, authorized the enactment of the sections of the ordinance, dealing with special exceptions, here involved. See *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 620, 53 A.2d 659. There is nothing in *Kelley* v. *Board of Zoning Appeals,* 126 Conn. 648, 650, 13 A.2d 675, upon which the plaintiffs place great stress, nor in *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals,* 140 Conn. 527, 102 A.2d 316, and *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 636, 109 A.2d 256, also relied upon by them, requiring a contrary conclusion.

There is no error.

In this opinion the other judges concurred.