JAMES LAWRENCE *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF NORTH BRANFORD

KING, C. J., ALCORN, HOUSE, THIM and RYAN, JS.

Argued October 10—decided November 25, 1969

*Charles A. Sherwood,* with whom was *Joseph B. Lukas,* for the appellant (defendant).

510

*Pasquale Young,* for the appellee (plaintiff).

THIM, J.  The plaintiff, James Lawrence, purchased a plot of approximately one-and-one-half acres on Church Street in the center of North Branford in April, 1966.  He resides in a house on the property with his wife and five children and had kept twenty-six chickens and two goats, which he used to feed his family.  On September 8, 1966, the zoning enforcement officer for the town ordered Lawrence to cease maintaining the goats and chickens, and the defendant, the zoning board of appeals, affirmed the action of the enforcement officer after a full hearing.  Lawrence appealed this decision to the Court of Common Pleas, which rendered judgment sustaining his appeal.  From that judgment, the board has appealed to this court.

The decision of the case turns on the interpretation of the pertinent provisions of the North Branford zoning ordinance, which are set forth in a footnote and their application to Lawrence's property.[1]  Lawrence's property is in an R-40 residence

---

[1] "[North Branford Zoning Regs. (1962)] § 39-11. R-40—RESIDENCE AND AGRICULTURE DISTRICT.

A.  Permitted uses:

(1) Any use permitted in R-60 Residence and Agriculture District, except:

(a) Riding stables, kennels, veterinarian and small-animal hospitals.

B. Space requirements. See Article v.

C. Parking requirements. See Article VIII."

"§ 39-10.  R-60—RURAL RESIDENCE AND AGRICULTURE DISTRICT.

A. Permitted uses:

(1) Dwellings.

(2) Farming, except mink, fox and hog farms. . . .

(10) Accessory uses and buildings, including roadside stands for local produce. . . ."

"§ 39-6. DEFINITIONS.

ACCESSORY BUILDING OR USE—One which is subordinate and customarily incidental to the main building and use on the same lot. . . ."

and agriculture district, and the basic issue which is before this court is whether the trial court erred in reversing the decision of the board that the keeping of goats and chickens is not an accessory use to a dwelling in an R-40 zone. The keeping of chickens and goats is not specifically permitted as either a principal or an accessory use. Although farming is permitted within the zone in question, Lawrence does not claim to be engaged in farming, nor does he rely on what would be an accessory use to farming as justification for the continuance of his raising of chickens and goats. His sole claim is that the use in question is permitted as an accessory use to a dwelling.

A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. *Fox* v. *Zoning Board of Appeals,* 146 Conn. 70, 73, 147 A.2d 472. The words employed are to be interpreted in their natural and usual meaning. See *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 114, 90 A.2d 862. The ordinance in question defines an accessory use as one which is subordinate and customarily incidental to the main building and use on the same lot. The crucial phrase "customarily incidental" is typically present in this type of legislation. 1 Anderson, American Law of Zoning § 8.26. While the necessity for permitting accessory uses must be admitted, the objectives of the comprehensive plan will be jeopardized if "accessory use" is so broadly construed as to allow incompatible uses to invade the district. Ibid.

In the *Fox* decision, supra, 74, we had occasion to define accessory use as "a use which is customary in the case of a permitted use and incidental to it.

1 Yokley, Zoning Law & Practice (2d Ed.) § 64 & Ann. Cum. Sup. An accessory use under a zoning law is a use which is dependent on or pertains to the principal or main use. 58 Am. Jur. 969, [Zoning,] § 46, & Ann. Cum. Sup." An expansion of this definition may be of assistance to our determination of the instant appeal.

The word "incidental" as employed in a definition of "accessory use" incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. Indeed, we find the word "subordinate" included in the definition in the ordinance under consideration. But "incidental," when used to define an accessory use, must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant. To ignore this latter aspect of "incidental" would be to permit any use which is not primary, no matter how unrelated it is to the primary use.

The word "customarily" is even more difficult to apply. Although it is used in this and many other ordinances as a modifier of "incidental," it should be applied as a separate and distinct test. Courts have often held that use of the word "customarily" places a duty on the board or court to determine whether it is usual to maintain the use in question in connection with the primary use of the land. See 1 Anderson, loc. cit. In examining the use in question, it is not enough to determine that it is incidental in the two meanings of that word as discussed above. The use must be further scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably

associated with the primary use. As stated in 1 Rathkopf, Zoning & Planning (3d Ed.), p. 23-4: "In situations where there is no . . . specific provision in the ordinance, the question is the extent to which the principal use as a matter of custom, carries with it an incidental use so that as a matter of law, in the absence of a complete prohibition of the claimed incidental use in the ordinance, it will be deemed that the legislative intent was to include it."

In applying the test of custom, we feel that some of the factors which should be taken into consideration are the size of the lot in question, the nature of the primary use, the use made of the adjacent lots by neighbors and the economic structure of the area. As for the actual incidence of similar uses on other properties, geographical differences should be taken into account, and the use should be more than unique or rare, even though it is not necessarily found on a majority of similarly situated properties. See 1 Rathkopf, op. cit., pp. 23-25, 23-26.

In the light of the analysis above of what is meant by "accessory use," it can be seen that the application of the concept to a particular situation "may often present and depend upon questions of fact, or involve or be open to a legal exercise of discretion by the administrative officials and the board of appeals." *Chudnov* v. *Board of Appeals,* 113 Conn. 49, 55, 154 A. 161. As to the application of the regulations to Lawrence's situation, it became the duty of the zoning board of appeals to decide, within prescribed limits and consistent with the exercise of a legal discretion, the application of the ordinance to the instant facts. *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals,* 150 Conn. 439, 442, 190 A.2d 594. Because the board was deter-

mining the reasonableness of the decision of the zoning enforcement officer, it was acting administratively in a quasi-judicial capacity in applying the regulations. See *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116, 117, 186 A.2d 377. Even though the board was not acting in a legislative capacity as would a zoning commission in making a change of zone, nevertheless its determination of the applicability of the ordinance, as we have construed it, to Lawrence's situation lay within its sound discretion. *Rocchi* v. *Zoning Board of Appeals,* 157 Conn. 106, 110, 248 A.2d 922; *Thorne* v. *Zoning Board of Appeals,* 156 Conn. 619, 238 A.2d 400; *Florentine* v. *Darien,* 142 Conn. 415, 115 A.2d 328. "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." *Toffolon* v. *Zoning Board of Appeals,* 155 Conn. 558, 560, 236 A.2d 96.

The instant case called for a determination by the board of whether the raising of chickens and goats was an accessory use—one which was subordinate and customarily incidental to property located in the center of town and used for residential purposes. Such a determination is one peculiarly within the knowledge of the local board. See *Stern* v. *Zoning Board of Appeals,* 140 Conn. 241, 245, 246, 99 A.2d 130.

After the hearing, the board retired to executive session, where the members unanimously agreed that the regulations did not permit the particular use in question. Although the term "accessory use" was mentioned only once in the executive session, several members noted uses which they felt were incidental to a residence and remarked that the

raising of poultry and livestock may only be permitted in conjunction with farming. Following the decision on accessory use, the board suo motu considered whether a use variance should be granted. The members ruled that no variance was justified, and their decision on this issue is not raised on appeal. The board's decision that the particular use in question was not an accessory use is reasonable in the light of other decisions on similar issues. "Absent an ordinance which includes the raising of fowl, hogs, or other animals, the courts have hesitated to attribute to the legislative bodies the intent to admit these uses to residential districts as agricultural or farming uses." 2 Anderson, American Law of Zoning § 11.05, p. 260; also see *Chudnov* v. *Board of Appeals,* 113 Conn. 49, 55, 154 A. 161.

"The basic issue before the court below was whether the . . . [plaintiff] proved that the action of the board of appeals was illegal." *Fox* v. *Zoning Board of Appeals,* 146 Conn. 70, 75, 147 A.2d 472. Upon the record we cannot say that the board acted illegally or abused its discretion, and an examination of the memorandum of decision of the trial court indicates that it merely substituted its discretion as to the application of the ordinance to Lawrence's situation for that of the board.

The trial court was in error in sustaining Lawrence's appeal from the decision of the zoning board of appeals affirming the action of the zoning enforcement officer.

There is error, the judgment is set aside and the case is remanded with direction to render judgment dismissing the appeal.

In this opinion the other judges concurred.