[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Christ Church Parish Society of Tashua [hereafter "church" or "plaintiff"] appeals from a decision of the Zoning Board of Appeals of the Town of Trumbull [hereafter "ZBA"] denying its appeal of a cease and desist order issued July 30, 1991 to cease expansion of the plaintiff's parking lot and a cease and desist order issued August 1, 1991 to cease the use of a sign and lighting at the front of the church's property. Additionally, the plaintiff appeals the ZBA's approval with conditions for a special exception to expand its current parking lot and approval with conditions for a special exception for a sign. This timely appeal is brought pursuant to the provisions of Conn. Gen. Stat. 8-8.
The parties have stipulated that the plaintiff owns the subject property. The plaintiff is therefore aggrieved. Winchester Woods Associates v. Planning and Zoning Commission,219 Conn. 303, 308 (1991); Rogers v. Zoning Board of Appeals,154 Conn. 484, 488 (1967).
The following facts of record are pertinent to this appeal:
The church is and has been the owner of real property located along Madison Avenue in Trumbull, designated on the assessor's map as B-3, parcel No. 37 and known as 5160 and 5170 Madison Avenue. The subject property is located in a AAA Residential District. (Return of Record [hereafter "ROR"] #1 p. 1)
Until July 1991, the church's property included a gravel parking lot surrounded by grassy areas. The gravel parking area had existed for many years. (ROR #5, pp. 3, 6) The church itself has been in the Town of Trumbull since 1760. (ROR #5, p. 15) In addition, in 1988, after applying for and receiving a special exception from the ZBA, the church installed a sign with lighting in front of its property.[1]
In July 1991 the plaintiff developed plans to pave and CT Page 3186 expand a parking area that included the existing gravel parking area and portions of an adjacent grassy area. (ROR #5, p. 6) The plaintiff undertook the paving and site work without seeking approval from the ZBA. (ROR #5, p. 6) Upon complaint, Donald Murray, the zoning enforcement officer and town building official for the Town of Trumbull [hereafter "ZEO"], inspected the site. and indicated that the church could pave the existing parking area, which he considered to be the graveled area only.[2] (ROR #5, p. 6) On July 30, 1991, the ZEO issued a cease and desist order [hereafter the "first order"] to stop expansion of the parking area. (ROR #1, p. 5; ROR #5 p. 1) The first order indicated that the plaintiff was "in violation of Article II Section I, Paragraph B Special Exceptions Sub Paragraph (2) of the zoning regulation of the Town of Trumbull in that any expansion of use is governed by the Zoning Board of Appeals." (ROR #1, p. 6) On August 14, 1991, the ZEO sent correspondence to the plaintiff indicating that, upon complaint, he had reinspected the paving on August 12, 1991. (ROR #1, p. 5) The ZEO found that the paving had increased the area used for parking, which he defined as the previously existing graveled area, and was thus in violation of the July 30, 1991 cease and desist order. (ROR #1, p. 5) The ZEO based his conclusion that the paving constituted an expansion of the parking area on his own observations without reference "to any surveyor's map." (ROR #5, p. 6)
On August 1, 1991, the ZEO issued another cease and desist order [hereafter "the second order"] to stop use of the lighted sign in front of the church's property. The second order was based on the plaintiff's failure to obtain the proper building or electrical permits and to record "the variance [sic] you were granted on July 7, 1988 to replace the sign." (ROR #1, p. 3; ROR #5, p. 6-9)
On August 29, 1991, the plaintiff appealed both cease and desist orders to the ZBA. (ROR #1) At the same time, the plaintiff applied to the ZBA for two special exceptions: one to expand the existing parking area and the second to obtain re-approval to use the current sign and assorted lighting installed in 1988. (ROR #1)
A public hearing was held on October 2, 1991. (ROR #5). The church noted that its attendance had significantly increased in the preceding five years and it sought to expand the parking lot in order to provide adequate off-street parking in conformance with the requirements of the zoning regulations. (ROR #5, CT Page 3187 pp. 4, 14) Further, the church explained that the paving would allow it to construct an unobtrusive handicapped entrance ramp in a manner that would maintain the historical appearance of the church. (ROR #5, pp. 4, 16) The plaintiff stated it chose asphalt paving for the parking lot in order to provide a smooth surface to meet handicapped access requirements and also because it was "acceptable as to the character of the church and the neighborhood." (ROR #5, pp. 4-5) With respect to the sign, the church indicated that it believed it had complied with the previously issued special exception and apologized for its failure to file the appropriate permits. (ROR #5, p. 2)
At least 40 people testified in support of the parking lot expansion and the lighted sign. Those who spoke at length noted, among other things, that paving would enhance safety, provide handicapped access, and not deface the historical character of the church. (ROR #5, pp. 13-19) Four people spoke against the plaintiff's request. The first speaker was against lighting of the sign and further expansion of the parking lot, but stated he could understand the need for paving and for handicapped access. (ROR #5, pp. 20-21). The second speaker was also against the lit sign and wanted to limit the size of the parking area. (ROR #5, p. 21) The most vocal opposition came from owners of property directly across the street from the church who were the original complainants to the ZEO. They were strongly against the paving of the parking lot and the lighting of the sign and made specific paving and landscaping recommendations to the ZBA.[3] (ROR #5, pp. 21-25)
At a public hearing on November 6, 1991, the ZBA denied the appeals of the cease and desist orders. (ROR #10, p. 6) With respect to both cease and desist orders, the ZBA gave the identical reason for denial: "the Board found that sufficient facts were not presented to indicate that the Building Official/Zoning Enforcement Officer acted improperly or that he had no right to issue the order." (ROR #10, p. 6) The ZBA granted the plaintiff's applications for special exceptions, pursuant to the provisions of Art. II, 1(B)(2) of the Zoning Regulations of the Town of Trumbull [hereafter the "regulations"], subject to certain specified conditions. (ROR #10, pp. 6-7)
The ZBA imposed five conditions on the special exception to expand the parking area, as follows:
1. Areas marked I and II on exhibit A shall CT Page 3188 be returned to their natural state. All plantings shall be removed and areas shall be reseeded with grass.
 2. Asphalt shall be removed from areas marked III IV. Hemlocks no less than six feet in height shall be planted along the church property line along Madison Avenue every 6' on Center; remainder of areas 3 4 shall be reseeded with grass.
 3. The driveway on Madison Avenue shall remain 30 feet in width, more or less.
 4. Any paving of parking lot II as shown on Exhibit A shall contain crushed natural gravel stone to provide a more natural look.
 5. A certified notice shall be recorded in the land records in the name of the record owner. (ROR #10, pp. 6-7)
The ZBA imposed three conditions on the special exception for the sign, as follows :
 1. The sign shall be no larger than 4' x 5' and shall be located only within church property.
2. The sign shall not be illuminated in any manner.
 3. A certified notice shall be recorded in the land records in the name of the record owner. (ROR #10, p. 7)
The ZBA gave the following reason to support the imposition of the special conditions: "The Board determined that this plan would provide the church with necessary parking and signage while maintaining the historical character of the church." (ROR #10, p. 8)
The church was formally notified of the ZBA's decision by letter dated November 14, 1991 (ROR #11) and the decision was published as required by law on November 19, 1991. (ROR #12)
I. The Cease and Desist Orders CT Page 3189
The plaintiff has alleged in its complaint that the ZBA abused its discretion in denying the appeals of the first and second cease and desist orders. As the plaintiff concedes, a zoning board of appeals acts in a quasi-judicial capacity when it reviews a decision of the ZEO to issue a cease and desist order. Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 514, (1969); Armstrong v. Zoning Board of Appeals, 158 Conn. 158, 169 (1969). In this capacity the ZBA must apply the town's zoning regulations to the facts presented in the specific case before it. Lawrence,158 Conn. at 513. This court must determine if the ZBA "correctly interpreted the regulation and applied it with reasonable discretion to the facts." Pascale v. Zoning Board of Appeals, 150 Conn. 113, 117 (1962).
The burden of proof is on the plaintiff to demonstrate that the ZBA acted illegally, arbitrarily or abused its discretion. Spero v. Zoning Board of Appeals, 217 Conn. 435, 440 (1991); Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707 (1988) and cases cited therein. When a zoning board of appeals gives reasons for its decision, the question for the court is "whether the reasons given are supported by the record and pertinent to the decision." Molic v. Zoning Board of Appeals, 18 Conn. App. 159,165 (1989). When no reasons are given, the court must search the entire record to determine whether the board's action was justified. Morningside Association v. Planning and Zoning Board.162 Conn. 154. 156-57 (1972). The court cannot make its own determination on questions of fact nor substitute its own judgment for the findings of the board. Horn v. Zoning Board of Appeals, 18 Conn. App. 674, 677 (1989).
In this case, the ZBA gave the same reason for denying the appeals of the first and second orders, that is, that "sufficient facts were not presented to indicate that the Building Official/Zoning Enforcement Officer acted improperly or that he had no right to issue the order." While conceding that it bears the ultimate burden of proving that the ZEO acted improperly, see Adolphson v. Zoning Board of Appeals, 205 Conn. at 707; Armstrong v. Zoning Board of Appeals, 158 Conn. at 169; the plaintiff argues, relying on Conn. Gen. Stat. 8-7, that the ZEO had an initial burden to transmit a proper record to support his decision which he failed to meet here.
This argument is made principally in connection with the first order. See Appeal Brief pp. 8-10. Section 8-7, however, CT Page 3190 does not place the burden of proof on the ZEO. Instead, it requires that "[t]he officer from whom the appeal has been taken shall forthwith transmit to the said board all papers constituting the record upon which the action appealed from was taken." In this case, there is no evidence that the ZEO relied upon any papers.[4] Rather, the ZEO testified at the hearing that he based his conclusion that the paving constituted an expansion of the existing parking area, requiring the church to apply for a special exception under the regulations, upon his observations. He further testified that "much of my zoning is done by observation. We don't have the time or the money to send surveyors out and do the property." (ROR #5, p. 6)
While the record does demonstrate that there was confusion because the ZEO understood the "existing parking area" to be only the graveled parking area while the plaintiff understood it to include grassy areas that parishioners had been using for parking, the record also demonstrates that the plaintiff had begun excavation work necessary for a back parking lot, had removed certain tree stumps and had paved both the gravel and grassy areas before the first order issued. (ROR # 5, p. 11)
The record sufficiently supports the ZBA's reasoning that the ZEO acted properly and had a right to issue the first order which, essentially, indicated that the church first had to go to the ZBA to seek a special exception to expand the use of its property. The appeal of the ZBA's denial of appeal of the first order, therefore, is denied.
With respect to the second cease and desist order concerning the sign, the plaintiff has argued that the sign was both a permitted use for which the ZBA had previously granted a special exception or alternatively a pre-existing nonconforming use entitled to protection under the law. It appears that the court does not have to address either argument because the defendant indicated at argument that the ZBA in fact acted illegally in considering the appeal because it lacked jurisdiction to review the cease and desist order based on the uncontested evidence that the sign had been constructed on town property. (ROR #4, p. 4; ROR #5, pp. 6, 7, 13) The appeal of the ZBA's denial of appeal of the second order, therefore, is sustained on the ground that the ZBA acted without jurisdiction.
II. The Special Exceptions CT Page 3191
A. The Parking Lot
The plaintiff has alleged and argued that the ZBA's grant of a special exception with conditions for the parking lot was illegal, arbitrary, and capricious. The plaintiff claims that the proposed expansion of its parking lot is a permitted use which conforms to the regulations and that the conditions imposed are invalid because they are not contained in the regulations.
A special exception allows a landowner to put its property to uses expressly permitted by the local zoning regulations. A. P. W. Holding Corp. v. Planning Zoning Board, 167 Conn. 182,185 (1974): Beckish v. Planning Zoning Commission,162 Conn. 11, 15 (1971) Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350, 353 (1967). "[T]he conditions permitting an exception must be found in the regulations themselves, and these conditions, if any, may not be altered." Service Realty Corp. v. Planning Zoning Board of Appeals,141 Conn. 632, 636 (1954). Furthermore, "a special permit can only be denied for failure to meet specific standards in the regulations, and not for vague general reasons." Grace Community Church v. Planning Zoning Commission, 6 Conn. L. Rptr. 152, 155 (March 17, 1992, Fuller, J.), citing Demaria v. Planning Zoning Commission, 159 Conn. 534, 542 (1970).
A zoning board acts in an administrative capacity when it considers an application for a special exception. Daughters of St. Paul, v. Zoning Board of Appeals, 17 Conn. App. 53, 56
(1988). The board's role is to evaluate whether the proposed use is expressly permitted under the regulations and whether the standards set forth in the regulations and statutes are satisfied. A.P. W. Holding Corporation v. Planning and Zoning Board, 167 Conn. at 185. "It has no discretion to deny the special exception if the regulations and statutes are satisfied." Daughters of St. Paul, Inc. v. Zoning Board of Appeals,17 Conn. App. at 56, citing Westport v. Norwalk, 167 Conn. 151, 155
(1974).
In its application for a special exception to expand the parking lot, the plaintiff explained that the proposed expansion was "to conform to . . . Article [II Section 1 B(2)][5] and provide `adequate off street parking' for current level of church attendance. Also to provide improved access to cemetery and allow for reasonable use of lot for handicapped people." (ROR #1, p. 3). The ZBA had no discretion to disapprove the proposed use CT Page 3192 since it is expressly permitted under the regulations and indeed satisfied the requirement to "provide adequate off street parking facilities." Furthermore, there was ample evidence before the ZBA establishing that the church needed additional parking. (ROR #5, pp. 3-5, 14). A.P. W. Holding Corporation v. Planning and Zoning Board, 167 Conn. at 185.
Nonetheless, having determined that "the parking lot was expanded into an area not previously paved, and plantings were placed in the road R.O.W.[6] that should be placed on church property," (ROR #10, p. 7) the ZBA here conditionally granted the special exception. See pages 7-8 supra. The reason given for the imposition of conditions was that "this plan would provide the church with the necessary parking and signage while maintaining the historical character of the church." (ROR #10, p. 8)
"When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. [Citations omitted]." Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. at 56. "The law does not permit the ZBA to impose conditions on a special exception which are not authorized by its regulations." Stage Coach I Associates v. Planning Commission, Town of Old Lyme, 6 CSCR 874 (August 23, 1991, Leuba, J.); see Beckish v. Planning and Zoning Commission,162 Conn. at 11; Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. at. 353. Moreover, "[t]he courts have been reluctant to uphold the strict enforcement, against religious uses, of regulations that require special exception uses to be in architectural harmony with the surrounding neighborhood." Daughters of St. Paul, Inc. v. Zoning Board of Appeals,17 Conn. App. at 67; citing 2 R. Anderson, American Law of Zoning (3d Ed.) 12.27. Since factors such as "historical character" or "architectural harmony" require the board to make what are effectively "subjective decisions," the conditions "under review must be reasonably supported by facts discernible in the record." Daughters of St. Paul, Inc. v. Zoning Board of Appeals,17 Conn. App. at 68.
The conditions that the ZBA imposed in this case must be examined in light of these principles. The first special condition requires the church to remove certain plantings that the ZBA determined had infringed on town road right of way and return those areas to their "natural state." While the evidence supports the ZBA's conclusion that there were plantings on town CT Page 3193 property (ROR #5, pp. 7, 12-13), there is nothing in the record or the regulation to support the requirement that the plantings be removed and the areas returned to a "natural state." Like the term "historical character," the term "natural state" is nowhere to be found in the town's regulations and suggests that the board made a subjective aesthetic decision rather than one supported by the facts and the regulation. Likewise, the second condition, which requires the removal of asphalt from certain paved areas and dictates specific landscaping, the third condition, which requires the driveway to be a certain width, and the fourth condition, which requires the use of a particular type of paving material to "provide a more natural look," all suffer from the same infirmities. While the regulation provides for landscaping, external appearance and layout so that "reasonable harmony with surrounding residential structures is maintained; that [the property] as so used will not detract from the residential character of the neighborhood . . . and will not adversely affect property values . . . ." these factors could not necessarily be considered with respect to expansion of the parking lot. The church, as a long established permitted use in the neighborhood, benefits from the presumption that its use did "not adversely affect the district" and thus "further inquiry into its effect on traffic, municipal services, property values, or the general harmony" of the neighborhood was precluded. See Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 443 (1979).
Further, the only evidence in the record supporting the second, third and fourth conditions is the testimony of lay witnesses, specifically the owners of property directly across the street from the church.[7] In light of the fact that at least 40 people offered contrary testimony which supported the parking lot expansion on the grounds that paving would enhance safety, provide handicapped access and not deface the historical character of the church, the lay testimony apparently relied upon is insufficient to support the board's decision imposing conditions. See Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. at 69. Furthermore, two board members themselves held opinions contrary to the imposed conditions.[8]
Thus, this court concludes that the first through fourth conditions are not supported by the regulation or the record and that they are therefore void. The imposition of a void condition, however, does not necessarily render the whole decision illegal and inefficacious." Parish of St. Andrews Church v. Zoning Board of Appeals, 155 Conn. at 354. If the board's decision is CT Page 3194 otherwise supported by sufficient grounds, it may be modified with the goal of ending the litigation. Id.; Beckish v. Planning and Zoning Commission, 162 Conn. at 18. The plaintiff's proposed use is expressly permitted in the regulations. The court finds that the void conditions are not essential or integral to the ZBA's decision and therefore they do not invalidate the ZBA's approval of the special exception. Thus, the plaintiff's appeal is sustained on the ground that the ZBA's conditional approval of the parking lot expansion was illegal, arbitrary, and capricious.[9]
B. The Sign
The plaintiff's second application for a special exception sought reapproval for the use of a sign and lighting installed in 1988. (ROR #5, pp. 2, 8). While the ZBA had unanimously authorized the sign in 1988, it was apparently constructed on town, not church, property. (ROR #4, p. 4, ; ROR #5, pp. 6, 7, 13)
Rather than granting reapproval for the plaintiff to continue to use the preexisting sign, the ZBA granted a special exception for a new sign subject to two conditions: first, that the sign be "no larger than 4' x 5'[10] and . . . located on church property" and second, that it "shall not be illuminated in any manner." The ZBA gave the identical reason for these conditions as it had given for the parking lot conditions, that is, "this plan would provide the church with the necessary . . . signage while maintaining the historical character of the church." (ROR #10, p. 8)
The plaintiff has not specifically argued that the ZBA's conditional grant of a special exception for the sign was illegal, arbitrary and capricious. However, it has claimed that an illuminated sign is a permitted use under the regulations or, alternatively, that its sign is a preexisting nonconforming use protected as a matter of law. See Appeal Brief, pp. 11-14.
The plaintiff concedes that the ZBA "may have an interest under the regulations in the dimensions and illumination of the proposed sign. . . ." but contests the condition that the sign be placed on church property. Appeal Brief p. 14. However, as the defendant appropriately notes in its brief at page 26, the ZBA had no authority to permit, by way of special exception or otherwise, the placement of the church's sign on town land. If the plaintiff wished the sign to be placed on town land, it had CT Page 3195 to seek approval from the Planning Zoning Commission. See Conn. Gen. Stat. 8-2, 8-26. By choosing to apply to the ZBA for a special exception for a sign, the plaintiff perforce submitted itself to the board's jurisdiction to grant permission for a sign only on the church's property.[11] Similarly, since the plaintiff sought the ZBA's reapproval of the 1988 grant for signage and lighting, it was neither arbitrary nor capricious for the ZBA to impose the same size limit as it had imposed in 1988. The ZBA's first condition is reasonably supported by the record and is within the scope of the regulations.
The second condition, however, does not appear to be reasonably supported by the record or the regulations. Illumination within a residence zone is not expressly prohibited by the regulations. See Regulations, Art. II, 1. Indeed, the only restriction on illumination is found in Article II, 1(B)(5)(i) which provides that hospitals, sanitariums and convalescent homes, when permitted as special exceptions in a residence zone, shall have "[e]xterior lighting . . . in such a manner as not to cause illumination or glare outside the parcel." While not bound by this requirement, the church is apparently willing to conform to it, see Appeal Brief p. 11, and the record indicates that the present sign's lighting is confined to its area. (ROR #5, p. 2) Moreover, since the record establishes that the front of the church and its main steeple are also illuminated daily from dusk until 11:00 p.m. (ROR #5, pp. 2, 26-27), the additional light from an illuminated sign cannot reasonably be said to detract from the church's historical character. The second condition is therefore void but it can be separated from the ZBA's decision to approve the sign subject to the first condition. Therefore, the court sustains the appeal concerning the second condition and denies it as to the first.
The plaintiff alternatively argues that the sign is a preexisting nonconforming use. A preexisting use is protected if it is lawful and was in existence at the time the zoning regulations were enacted. Cummings v. Tripp, 204 Conn. 67, 91-92
(1987); Helicopter Associates, Inc. v. Stamford, 201 Conn. 700,712 (1986). The Trumbull zoning regulations became effective October 15, 1959. (ROR #13) The sign was erected in 1988 when it replaced a sign that had been a few feet away. (ROR #5, p. 9) Therefore, the sign was not in existence at the time the regulations were enacted and this argument must fail.
In conclusion, the court rules as follows: the appeal of the CT Page 3196 denial of appeal of the first cease and desist order is denied; the appeal of the denial of appeal of the second cease and desist order is sustained; the appeal of the grant of a conditional special exception to expand the parking lot is sustained and the ZBA's decision is modified to allow the special exception without the challenged conditions; and the appeal of the grant of a conditional special exception for the sign is denied as to the first condition, sustained as to the second condition and the ZBA's decision is modified to allow the special exception with the first and third conditions only.
LINDA K. LAGER, JUDGE