[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal brought under the provisions of General Statutes § 8-8 from a decision of the Zoning Board of Appeals of the Town of Montville (hereinafter the Board) denying plaintiffs' appeal of a refusal by the zoning enforcement officer (hereinafter the ZEO) to issue a zoning permit for the construction and use of a concrete ready-mix plant on property in an R-120 residential zone. For reasons hereinafter stated, the action of the Board is affirmed.
General Statutes § 8-8 limits appeals from decisions of local zoning boards of appeals to parties who are aggrieved by a decision of the board. Here, the evidence establishes that the plaintiffs, Daniel and Maureen Kobyluck, are the owners of the property in question and instituted the proceeding before the Board. It is, therefore, found that they are aggrieved within the meaning of § 8-8 and have standing to prosecute this appeal.Rogers v. Zoning Board of Appeals, 154 Conn. 484, 488 (1967). CT Page 1833
All notices required by law have been properly given and timely published. No questions concerning jurisdiction have been raised.
The basis facts underlying this appeal are not in dispute and are summarized as follows:
Plaintiffs Daniel and Maureen Kobyluck own the property in question which is located in an R-120 residential zone within the Town of Montville. The plaintiffs operate a sand and gravel excavation operation under a special permit and a crushing plant which is a non-conforming use on the property. They desire to operate a ready mix concrete plant on the same property. This will necessitate the construction of a building approximately 360 square feet in area.
Ready-mix concrete plants as contemplated by plaintiffs are not specifically allowed in an R-120 residential zone. On August 1, 1996, plaintiffs filed with the Board an application for a variance of § 6.2 of the zoning regulations to enable them to operate a ready-mix plant on their property. The application for a variance was granted by the Board in September, 1966.
The granting of the variance was promptly appealed to the Superior Court. (DeMelia, et al v. Zoning Board of Appeals,
Superior Court, judicial district of New London, Docket No. 539659.)
Plaintiffs were informed by the ZEO that they would be required to apply to the Planning and Zoning Commission for a special permit before they could operate this plant. This application was filed and denied by the Commission on December 10, 1996. No appeal was taken from this decision.
It does not appear that a special permit could have been issued under the regulations since the granting of such permits in an R-120 zone was not allowed under the zoning regulations. Plaintiffs could, however, proceed under the variance.
After consulting with their attorney, on January 17, 1997, plaintiffs applied to the ZEO for a zoning permit to allow construction and use of the ready-mix plant. In their application, plaintiffs cited two reasons why the zoning permit should be issued. CT Page 1834
 A. A variance to allow the construction and use of a concrete ready mix plant as a permitted use under 6.2 of the zoning regulations was approved by the Zoning Board of Appeals on September 9, 1996, and a Certificate of Decision was filed with the Town Clerk and, even if no variance had been granted,
 B. The requested use is an accessory use to the principal use located on this lot and therefore is permitted as of right under 6.2.9 of the zoning regulations.
The ZEO denied the application on January 29, 1997. This denial was appealed to the Board which scheduled the matter for a public hearing. At the hearing plaintiff and other parties at interest appeared and were heard by the Board.
At its meeting of May 5, 1997, the Board voted to uphold the decision of the ZEO. In the minutes of the meeting, the following language follows the statement of the Board's decision: "The board members had concerns regarding the cubic footage of material to be removed — is it the total amount yearly." It must be assumed that this was the reason given by the Board for its decision.
On May 28, 1997, plaintiffs instituted the present appeal of the Board's decision to this court.
Subsequent to the start of this action, on August 20, 1997, a decision was rendered in DeMelia, et al v. Zoning Board of Appeals,
sustaining the appeal from the granting of the variance of § 6.2 to the plaintiffs in September, 1996. That decision has not been appealed.
The effect of the decision in the DeMelia case was to render the first reason relied upon by plaintiffs in their application to the ZEO and subsequently to the Board, and this Court, room. The second reason, however, that the ready-mix plant is an accessory use to the principal uses enjoyed by the plaintiffs, is still viable and is now being relied upon by plaintiffs.
In considering the issues raised in this appeal, the scope of judicial review is limited. Horn v. Zoning Board of Appeals,18 Conn. App. 674, 676 (1989). The authority of the court is limited CT Page 1835 by § 8-8 to a review of the proceedings before the Board. The function of the court in such a review is to determine whether the Board acted fairly or on valid reasons with the proper motives. Willard v. Zoning Board of Appeals, 152 Conn. 247,248-49 (1964). The court is limited to determining whether the record reasonably supports the conclusions reached by the Board. Burnamv. Planning Zoning Commission, 189 Conn. 261, 265 (1983). The court cannot substitute its discretion for the liberal discretion confirmed by the legislature on the Board. The court is limited to granting relief only when it can be shown that the Board acted arbitrarily or illegally and consequently has abused its statutory authority. Gordon v. Zoning Board, 145 Conn. 597, 604
(1958). The burden rests with the plaintiff to prove the impropriety of the Board's actions. Burnam, supra, 189 Conn. 266.
It is not the function of the court to rehear the matter or question the wisdom of the defendant Board in taking the action which it did. The court is limited to determining whether or not the Board's action can be supported under the law.
Although the factual and discretionary determinations of the Board must be given considerable weight by the court, it is for the court to expound and apply governing principals of law.Domestic Violence Services of Greater New Haven Inc. v. FOIC,47 Conn. App. 466, 470 (1998).
Following an appeal from the action of a zoning enforcement officer to a zoning board of appeals, "a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the Board and the record before the board." Caserta v. ZoningBoard of Appeals, 226 Conn. 80, 82 (1993). The Board in reviewing the action of the ZEO was "acting administratively in a quasi-judicial capacity in applying the [regulation]." Lawrence v.Zoning Board of Appeals, 158 Conn. 509, 514 (1969).
The Board's authority to hear and decide appeals, where it is alleged that there is an error in a decision made by the ZEO, is derived from General Statutes § 8-6 and § 22.1 of the zoning regulations. Although the zoning regulations are silent on the matter, General Statutes § 8-7 requires the Board to state upon the record the reasons for its decision in such appeals. Here, the only words on the record which could be construed as expressing a reason for the Board's decision is that language stating the Board's concern over the cubic footage of CT Page 1836 material to be removed. This language does not constitute a valid reason for the action taken. It is inadequate and does not even appear to be related to the issues then before the Board. It certainly is not related to the question as to whether the proposed ready-mix plant could be considered an accessory use as claimed.
Where, as here, the Board fails to give the reasons for its action, or if its reasons are inadequate, "the trial court must search the record to determine whether a basis exists for the action taken." Stankiewicz v. Zoning Board of Appeals,15 Conn. App. 729, 732 (1988), affirmed 211 Conn. 76 (1989).
The Board was required to decide whether or not the proposed ready-mix plant would be an accessory use to the sand and gravel excavation and crushing plant operation being conducted by plaintiffs on their property. In so doing, the Board was called upon to determine the applicability of the law to a given state of facts presented to it. The court must decide whether the board correctly interpreted the regulations and applied such interpretation with reasonable discretion to the facts. Casertav. Zoning Board of Appeals, 28 Conn. App. 256, 258 (1992). Affirmed in pertinent part, 226 Conn. 80 (1993).
Section 1.3 of the zoning regulations defines "accessory" in pertinent part as follows:
 ACCESSORY: The term applied to a building or use which is clearly incidental or subordinate to, and customary in connection with the principal building or use and located on the same lot with such principal building or use.
The phrase "incidental or subordinate to and customary in connection with" is the operative language of the definition. Similar language was considered by the court in Lawrence v.Zoning Board of Appeals, supra, 158 Conn. 511. The court found this type of language to be typical where "accessory" is defined in zoning regulations. Id.
The principal evidence in the record bearing on the "accessory" question was the testimony of Matt Kobyluck. This testimony was primarily directed to whether or not the ready-mix operation would be customarily found with excavation and crushing operations. He testified that Northeast Enterprises operated an CT Page 1837 asphalt plant, crushing plant and a concrete plant within the Town of Montville. He cited other similar examples in other nearby towns.
Mr. Kobyluck stated that the concrete mixing operations were accessory uses in all of these examples. There was nothing in the record, however, to support Mr. Kobyluck's statement that the concrete operations were accessory uses and not primary uses. There was nothing to indicate how Mr. Kobyluck would have known which use was primary or which was accessory. His testimony essentially was that the uses existed together.
The court has defined an accessory use as "a use which is customary in the case of a permitted use and incidental to it. An accessory use under a zoning law is a use which is dependent on or pertains to the principal or main use." Lawrence v. ZoningBoard of Appeals, supra, 158 Conn. 511-512. (Citation omitted.) This definition considered in Lawrence is similar to the definition found in the Montville zoning regulations except that these regulations require that the accessory use be "clearly incidental or subordinate . . ." "Clearly," which is the adverbial form of "clear," has been defined as "plain or evident to the mind; unmistakable." The American Heritage Dictionary 279 (2d college ed. (1985). It would appear then that the Montville regulations require a high degree of certitude before a use could be considered an accessory use under the regulation.
This stringent requirement is understandable since as the court stated in
Lawrence v. Zoning Board of Appeals, supra,158 Conn. 511.
 While the necessity for permitting accessory uses must be admitted, the objectives of the comprehensive plan will be jeopardized if accessory use is so broadly construed as to allow incompatible uses to invade the district. Ibid.
The record is devoid of evidence concerning the breakdown in work or activity between the existing uses, claimed to be the principal use, and the proposed ready-mix operation. The only fact remotely bearing on the issue might be the size of the building to be constructed for the ready-mix plant; which is only 360 square feet in area. This fact standing by itself, however, CT Page 1838 is far from conclusive since there was no evidence concerning the volume of business, number of trucks to be employed, etc.
Plaintiffs had the burden of proof on the issues presented. The lack of evidence on record supporting the proposition that the ready-mix use would subordinate to the primary use and thereby be an accessory use supports the Board's decision.
There is another factor which supports the Board's decision. In considering whether or not a use may be considered "customary," the zoning regulations should be examined to determine if the use is in fact prohibited by the regulations.Lawrence v. Zoning Board of Appeals, supra, 158 Conn. 512-513. In construing a zoning regulation, it is the primary goal of the court "to ascertain and give effect to the intent of the local legislative body as expressed in the regulations as a whole."Essex Leasing Inc. v. Zoning Board of Appeals, 206 Conn. 595, 601
(1988).
The property in question is located within a residential R-120 district. Section 6.1 indicates that this zone was intended to provide a transition area between the higher density R-80 district and the lower density R-160 district and that areas within the R-120 district would usually be remote from public water and sewer services.
Excavation operations up to 500 cubic yards are permitted uses within the zone and excavations in excess of 500 cubic yards are permitted by special permit. Concrete manufacturing operations are not allowed in the R-120 zone and are prohibited in all zones except the light industrial (LI) zone. Such uses are allowed in the LI zone only by special permit subject to the performance standards set forth in § 17.8.A1-4.
The requirements for obtaining a special permit are quite comprehensive and involve a public hearing and meeting the general evaluation criteria of § 17.3. The performance standards of § 17.8.A1-4 would also have to be met. An air quality permit from the state Department of Environmental Protection would also have to be obtained.
It must then be concluded that the intent of the local agency which drafted the zoning regulations was to restrict and control concrete manufacturing operations such as the ready-mix plant which plaintiffs proposed and to prohibit such activity within CT Page 1839 the district, in which plaintiffs' property is located.
Plaintiffs here claim that the proposed ready-mix plant would be an accessory use and should be permitted as a matter of right under the regulations and that the Board was in error in denying their appeal. The burden rests with plaintiffs to prove the impropriety of the Board's actions. Burnam v. Planning and ZoningCommission, supra, 189 Conn. 266. After a review of the record as required by Stankiewicz v. Zoning Board of Appeals, supra,15 Conn. App. 729, it must be concluded that plaintiffs have not proven their case and the Board did not act arbitrarily or illegally and in abuse of its statutory authority in denying plaintiffs' appeal from the action of the ZEO.
Accordingly, the decision of the Board appealed from affirmed.
Joseph J. Purtill Judge Trial Referee