[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON ZONING APPEAL
NATURE OF THE PROCEEDINGS
The plaintiff Michael Quoka is the appellant in this zoning appeal. He owns several parcels of land in an RM-1 District (low middle density residential) in the Barnes Avenue area of New Haven adjacent to the Betsy Ross public school. The New Haven Board of Education desires to construct a central kitchen for the entire New Haven public schools system rather than utilizing food preparation facilities in each separate school. The Board of Education has determined that such a central food preparation facility should be located on the site of the Betsy Ross school. The plans for such a facility would include the condemnation of some of the real property of the plaintiff in order to construct the type of facility envisioned by the Board of Education.
The Board of Education applied for a certificate of zoning compliance for such a facility at the site of the Betsy Ross school and adjacent lots. That application was granted. The plaintiff appealed to the Board of Zoning Appeals of the City of New Haven (BZA). On March 20, 2001, the CT Page 12958 BZA denied the plaintiff's appeal, voting to sustain the administrative decision of the zoning director in issuing the certificate of zoning compliance. This appeal to the Superior Court followed. The named defendants are the New Haven BZA and the New Haven Board of Education.
RELATED CASES
In addition to this appeal of the BZA decision to the Superior Court, the plaintiff has filed three other related appeals in the Superior Court, in all of which the parties have agreed to forbear further pleading or prosecution until this appeal is decided: an appeal from the decision of the City Plan Commission to grant an Application for Permit Development; a second appeal from a ZBA decision, to approve the development permit; and an appeal from a decision of the ZBA to grant a variance for a smaller front yard setback (13.3 feet instead of 20 feet) to accommodate the proposed kitchen facility. In addition the plaintiff has sought injunctive relief related to the intention of the defendant Board of Education to prosecute a condemnation case pursuant to the taking of the plaintiff's property by the City of New Haven for the proposed food production facility. The parties anticipate that a decision on the merits of the instant appeal may be dispositive or at least may facilitate settlement of the remaining cases.
STANDARD OF REVIEW
It is not the function of the trial court to substitute its judgment on factual issues for those of the zoning board. Rather the trial court must decide whether the board correctly interpreted and applied the regulations governing the situation. Spero v. Zoning Board of Appeals,217 Conn. 435, 440 (1991). The court must seek to discern the intent of the legislative body that enacted the regulations as manifested in the words of the regulation. Id., 441. The burden of proof is on the plaintiff to demonstrate that the board acted improperly. Moreover the board is endowed "with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Id. 440.
AGGRIEVEMIENT
This court heard evidence and received the record, parts of which are the subject of motions to correct or supplement the record. The court finds aggrievement, a finding that is not opposed by the BZA or the Board of Education.
FACTS CT Page 12959
There is no dispute about the parameters of the proposed plan. The school board desires to construct a central food preparation plant serving all of the New Haven public schools. The goal of such a centralized facility is to correct deficiencies and inefficiencies in the current food service delivery program for New Haven students. Most significant of these is the length of time between the preparation of food and the service of it such that the food is at a temperature outside the "safe zone" (cold food above 40° F and hot food below 140° F). The new plant would prepare food centrally and ship it to individual schools in a "chilled" state, to be "rethermalized" at satellite kitchens within each school immediately prior to serving. Exhibit 18. The plant would consist of 21,500 feet, with a delivery bay capable of receiving food and other supplies from large, eighteen wheel vehicles. The plant would employ about fifty people. Clearly, this is no ordinary school cafeteria.
The Board of Education is determined to locate the plant at a school
because the state will provide 80% funding for construction of such a central food facility only if it is located on the site of a school. Accordingly the Board of Education chose Betsy Ross because of the access to main traffic arteries and the amount of space already available on land owned by the Board there.
THE ZONING DISTRICT
The subject property is in an RM-1 District that does not permit such a facility. The Zoning Ordinance of the City of New Haven does permit non-residential uses as in an RS-2 District, among them public and private elementary and secondary schools. Sec. 12.B.1.f. It further permits "[a]ccessory uses customarily incidental to [the use as a public school]." Sec. 12.B. The Zoning Ordinance defines accessory use as a use "located on the same lot with a principal use, and clearly incidental or subordinate to, and customary in connection with, the principal use." Section 1-12, Definitions.
THE DISPUTED ISSUE
Both sides agree that the sole issue presented in this Superior Court appeal is whether the ZBA properly found that a food production facility of the size and type contemplated by the Board of Education would constitute an accessory use to the existing Betsy Ross school.[1] The court finds the decision of the ZBA to be in contravention of the Zoning Ordinance of the City of New Haven, Exhibit 25, and thus illegal, such that the appeal must be sustained.
The Zoning Ordinance establishes the three elements, as it were, of a CT Page 12960 finding of accessory use: that the use must be 1) on the same lot; 2) incidental or subordinate; and 3) customary.
With respect to the use being on the same lot, though not now the case, the parties concede that if all necessary approvals were to be in place for the food production facility, the city could take the plaintiff's property through a condemnation proceeding and merge the property into one lot with that of the Betsy Ross school. The first criterion of accessory use would therefore be satisfied.
The finding of the ZBA on the third criterion — whether the use is customary — is trickier. The ZBA made a finding that it was customary in New Haven to utilize on-site kitchen facilities at one school to prepare foods for consumption at other schools, for purposes of economy and efficiency. That is a conclusion that finds some support in the record.[2] The court is not authorized to substitute its judgment for that of the ZBA in making such a finding. The fact that there may be the preparation of foods at one school kitchen in larger quantity than that school can utilize for purposes of transporting and utilizing the additional food at another school says nothing about the construction of a food production facility of the kind proposed here. There is nothing in the record to support the ZBA's decision that a centralized food production facility is "customary in connection with" the principal use of property as a public school.
It is the second criterion that the ZBA most egregiously ignored, however. In examining the record and considering the definition of the words "incidental or subordinate," particularly when modified by the adverb "clearly," the court is compelled to set aside the ZBA decision.
Both parties cite the case of Lawrence v. Zoning Board of Appeals,158 Conn. 509, 264 A.2d 552 (1969) for its useful exegesis of the common definitions of accessory use. Lawrence involved an ordinance that defined an accessory use as one that was "subordinate and customarily incidental" to the main use, see Lawrence supra, 515, n. 1, thus incorporating the concept of "custom" into the definition of "incidental." The New Haven ordinance has two definitions with which the court must be concerned: 1) the primary definition that requires the court to decide whether the use is "clearly incidental or subordinate to" and whether it is "customary in connection with" the main use; and 2) what the court will term theoperational definition, that upon first having found the elements of accessory use require the court to determine whether the proposed use is "customarily incidental" to the use as a school. Unless the use meets the primary definition first, the court need not consider the operational definition. CT Page 12961
Quite independent of "custom" then is the question under the New Haven ordinance of whether the proposed use is "clearly incidental or subordinate." And taking the word "incidental" alone, Lawrence is helpful.
 The word "incidental" as employed in a definition of "accessory use" incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. Indeed, we find the word "subordinate" included in the definition in the ordinance under consideration. But "incidental," when used to define an accessory use, must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant. To ignore this latter aspect of"incidental" would be to permit any use which is not primary, no matter how unrelated it is to the primary use.
Id., 512.
Thus, the meaning of "incidental or subordinate" continues to be inextricably linked to the meaning of "principal use," defined in the New Haven ordinance as "[t]he main use on a lot." Section 1-12 Definitions. The ordinance presupposes that if there are multiple uses on a lot, one use is principal, and all others are incidental or subordinate. The latter are dependent on the former. Without the principal use, normally the incidental uses cease or significantly decrease.
The most common example of an incidental use is parking. Where the primary use of a site is as a theatre or restaurant or office building or school, parking is an incidental or subordinate use. Were the primary use to cease, the incidental use would diminish or cease as well.
That is certainly not the case with this proposed food production facility. The school board conceded that were the Betsy Ross school, to which the food production facility would be "incidental," to be closed, the food production facility would still remain open and in operation.[3]
Thus the incidental or subordinate use would not cease if the primary use — the school — ceased operation.
Certainly in this situation, the food production facility not only fails to be incidental or subordinate, but given its size and its importance to the operation of the New Haven public school system, it is CT Page 12962 likely to supplant the Betsy Ross school as the primary use of the lot.
Customary or not, there is no basis in the record for a finding that the food production facility is anything other than an independent use of the property, albeit a use that is convenient and fiscally prudent. Nor is it likely that such a finding of incidental or subordinate use could ever be supported as the plan is currently conceived.
The proposed use of the property as a food production facility for the New Haven public schools system does not meet the primary definition of "accessory use" in the Zoning Ordinance of the City of New Haven. The decision of the ZBA was unreasonable, arbitrary and illegal. The appeal of the plaintiff is SUSTAINED.
Patty Jenkins Pittman, Judge