BEVERLY CROSS *v.* TOMMY WILSON

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 412

Argued May 17—decided September 8, 1978

*P. J. Pittman,* for the appellant (defendant).

*Carl R. Ajello,* attorney general, and *Michael Arcari,* assistant attorney general, for the appellee (state).

DAVID M. SHEA, J. In this paternity action the court found the defendant to be the father of a child born to the plaintiff on May 16, 1972. After making this finding on the paternity issue, the court continued the case for a further hearing upon the financial issues required to be determined under General Statutes § 52-442 (Rev. to 1977). At the second hearing the attorney general appeared in behalf of the state, which had paid $5595.82 for the support of the child from December 1, 1973, to June 30, 1976. At the hearing the court ordered the defendant to pay this sum to the state, plus costs and an attorney's fee, at the rate of $4 per week. He was also ordered to pay the state an additional $10 per week for current support of the child. In his appeal from the judgment the defendant has raised four issues: (1) whether the provision of § 52-442 requiring that a putative father bear the entire "expense of lying-in and of support and maintenance of the child until the time of rendering judgment" violates his constitutional right to due process of law; (2) whether

that provision discriminates unlawfully between putative fathers who contest the paternity claim and those who acknowledge paternity without the necessity of adjudication in accordance with General Statutes § 52-442a (Rev. to 1977); (3) whether the assessment of the full expense of supporting the child before judgment against the putative father pursuant to § 52-442, without regard to the financial circumstances of the mother, constitutes unlawful discrimination on the basis of sex in violation of his right to equal protection of the laws; and (4) whether the amounts of the weekly support orders were reasonable.

## I

The defendant concedes that § 52-442[1] does require the court, once the issue of paternity has been decided, to find the putative father liable for the entire "expense . . . of support and maintenance of the child until the time of rendering judgment," regardless of his financial circumstances during the period in which the support obligation has accrued. He claims that this provision deprives a putative father of due process of law by "chilling" the exercise of his right to defend a paternity action through the imposition of a penalty upon one who chooses to

---

[1] "[General Statutes (Rev. to 1977)] Sec. 52-442. JUDGMENT AND ORDER OF COURT. If the defendant is found guilty, the court shall order him to stand charged with the support and maintenance of such child, with the assistance of the mother if she is financially able, and to pay a certain sum weekly until the child attains the age of eighteen years; and the court shall ascertain the expense of lying-in and of support and maintenance of the child until the time of rendering judgment, and order him to pay the amount thereof to the complainant, or, if a town or the state has paid such expense, to the town or the state, as the case may be, and shall grant execution for the same and costs of suit taxed as in other civil actions, together with a reasonable attorney's fee; and may require him to become bound with sufficient surety to perform such orders for support and maintenance and the expense of lying-in and to indemnify the state or the town chargeable with the support of such child from any expense for its maintenance. If he fails to comply with any such order, the court may commit him to a community correctional

contest the action. The penalty is said to arise because the liability for support will usually accrue at a higher rate than the sum which is ordered to be paid periodically by a person of modest means. In this case, for example, the liability of $5595.82 imposed on the defendant was accumulated at the rate of approximately $42 per week as compared with the weekly payments of $4 for past support and $10 for future support ordered by the court, which were based upon his ability to pay. This disparity between the rate of liability accrual and the periodic support payments ordered would amount to a substantial sum where the delay in bringing the action or in prosecuting it to judgment has been extensive. As a result, the defendant claims, there is a strong inducement for a putative father to acknowledge paternity as soon as possible rather than to exercise his right to defend.

Whatever merit the defendant's argument might have if the judgment for past support of the child had been rendered in favor of the named plaintiff, in the case before us the judgment runs solely in favor of the state, the defendant having been ordered to reimburse the state for the full amount which it

center, there to remain until he complies therewith; but, if it appears that the mother does not apply the weekly allowance paid by him toward the support of such child, and that such child is chargeable, or likely to become chargeable, to the town where it belongs, the court, on application, may discontinue such allowance to the mother, and may direct it to be paid to the selectmen of such town, for such support, and may issue execution in their favor for the same. The provisions of section 17-323a shall apply to this section. The clerk of the court which has rendered judgment for the payment of money for the maintenance of any child under the provisions of this section shall, within twenty-four hours after such judgment has been rendered, notify the selectmen of the town where the child belongs. Any order for the payment of support for any such child may at any time thereafter be set aside or altered by any court issuing such order. Failure of the defendant to obey any order for support made hereunder may be punished as for contempt of court and the costs of commitment of any person imprisoned therefor shall be paid by the state as in criminal cases."

had expended in support of the child to the date of judgment. In a paternity action brought by the mother the statute authorizes the entry of such a judgment for past support, "if a town or the state has paid such expense." General Statutes § 52-442. Although the state's right of reimbursement depends upon the outcome of the paternity claim, its rights are in no sense coterminous with those of the mother.[2] It has an independent statutory right to institute a paternity proceeding and may pursue any such petition commenced by the mother, if she should fail to prosecute it. General Statutes § 52-440a (Rev. to 1977).[3] In appearing on behalf of the state in this action, the attorney general was exercising this right given by § 52-440a.

In fashioning his attack upon § 52-442 the defendant has overlooked General Statutes § 17-83e[4] which provides that "the parents of an aid to dependent children beneficiary shall be liable to repay to the

---

[2] The distinction between the complainant and the public authority actually supporting the child with respect to the proof required by the statute was early recognized. *Davis* v. *Salisbury*, 1 Day 278, 283.

[3] "[General Statutes (Rev. to 1977)] Sec. 52-440a. ACTION BY STATE OR TOWN. The state or any town interested in the support of a child born out of wedlock may, if the mother neglects to bring such petition, institute such proceedings against the person accused of begetting the child, and may take up and pursue any petition commenced by the mother for the maintenance of the child, if she fails to prosecute to final judgment. Such petition may be made by the commissioner of social services or the town welfare administrator on information or belief. The mother of the child may be subpoenaed for testimony on the hearing of the petition."

[4] "[General Statutes] Sec. 17-83e. CLAIM OF STATE FOR REPAYMENT OF AID. If a beneficiary of aid under this chapter has or acquires property of any kind or interest in any property, estate or claim of any kind, the state of Connecticut shall have a claim, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid to him or in his behalf under said chapter; and, in addition thereto, the parents of an aid to dependent children beneficiary shall be liable to repay to the state the full amount of any such aid paid to or in behalf of either parent, his spouse, and his child or children. The state of Connecticut shall have a lien against property of any kind

state the full amount of any such aid paid to or in behalf of . . . [the] child . . . ." The statute imposes upon such parents a liability to repay the state in full for benefits awarded to their children, legitimate or illegitimate. *Thibeault* v. *White,* 168 Conn. 112, 117; *State* v. *Griffin,* 35 Conn. Sup. 603, 607. The defendant, therefore, even in the absence of § 52-442, would have been liable to the state, jointly with the named plaintiff, for any funds which it had expended for the support of their child. Furthermore, the liability created by § 17-83e is not limited to the amount which a father has been ordered to pay periodically in accordance with his financial ability pursuant to some other statutory proceeding. *State* v. *Griffin,* supra. Any difference between the amount of support furnished by the state and the payments received becomes a debt for which the parents remain jointly liable. For this reason, a putative father is in no way penalized for defending a paternity action. His obligation for support continues to accrue at the rate that public funds are spent in support of his child after judgment as well as before. We do not regard the substantial liability for past support which may accumulate as a result of the delay attendant upon a contested paternity action, as compared to the situation where periodic payments have been made earlier upon resolution of the paternity issue, as having any significant effect upon the exercise of the right to defend. Whatever hardship may be involved is no

or interest in any property, estate or claim of any kind of the parents of an aid to dependent children beneficiary, in addition and not in substitution of its claim, for amounts owing under any order for support of any court, including any arrearage under such order, provided household goods and other personal property identified in section 52-352, and real property pursuant to section 17-82c, so long as such property is used as a home for the beneficiary shall be exempt from such lien. In the case of any claim made after October 1, 1959, the claim for medical payments, even though such payments were made prior thereto, shall be restricted to medical disbursements actually made for care of any such beneficiary."

different from that facing any litigant obligated to make periodic payments, such as a lessee or instalment debtor, whose unsuccessful assertion of a defense has postponed the day of reckoning. Accordingly, we must reject the claim of the defendant that his right to due process of law has been infringed.

## II

The argument of the defendant that § 52-442 discriminates unreasonably between fathers who contest the paternity action and those who acknowledge paternity in accordance with § 52-442a (Rev. to 1977)[5] is also without merit. Again the defendant has erroneously assumed that the periodic support payments ordered prospectively pursuant to either a judgment under § 52-442 or an agreement for support accompanying an acknowledgment of paternity

[5] "[General Statutes (Rev. to 1977)] Sec. 52-442a. ACKNOWLEDGMENT OF PATERNITY AND AGREEMENT TO SUPPORT; JUDGMENT. (a) In lieu of or in conclusion of proceedings under section 52-435a, the written acknowledgment of paternity executed by the putative father of the child when accompanied by a written affirmation of paternity executed and sworn to by the mother of the child and filed with the court of common pleas for the geographical area in which the mother of the child or the putative father resides shall have the same force and effect as a judgment of that court; and an agreement to support the child by payment of a weekly sum until the child attains the age of eighteen years, together with provision for reimbursement for lying-in expense, accrued maintenance and reasonable expense of prosecution of the petition, when filed with, and approved by a judge of, said court, at any time, shall have the same force and effect, retroactively or prospectively in accordance with the terms of said agreement, as an order of support entered by that court, and shall be enforceable and subject to modification in the same manner as is provided by law for orders of the court in such cases. Payments under such agreement shall be made through the family relations office of the court of common pleas. Such written affirmations, acknowledgments and agreements to support shall be sworn to, and shall be binding on the person executing the same whether he is an adult or a minor. Such mother shall not be excused from making such affirmation on the ground that it may tend to disgrace or incriminate her; nor shall she thereafter be prosecuted for any criminal act involved in the conception of the child as to whose paternity she makes affirmation. . . ."

under § 52-442a are a limitation upon the liability of the putative father. As we have explained, the liability of the parents to reimburse the state for amounts expended for the child is subject to no reduction except for payments actually made. We can perceive no difference between these statutes with respect to the obligations imposed upon putative fathers. The items entering into the determination of the amount of liability as well as the factors to be considered in setting the amount of the periodic support order are the same under both statutes. No violation of the defendant's right to equal protection of the laws can be found in the comparison of § 52-442 and § 52-442a.

### III

The final ground upon which the defendant relies for invalidation of § 52-442 is that the provision for assessment against the father of the full expense of supporting the child until judgment without consideration of the mother's financial ability constitutes invidious discrimination based upon sex in violation of his right to equal protection of the laws under the state and federal constitutions.[6]

From colonial times our statutes dealing with illegitimate children, formerly known as bastardy statutes, have contained in substance the provision presently found in § 52-442, that, upon a finding of guilty, the defendant would "stand charged with the support and maintenance of . . . [the] child, with the assistance of the mother." See Connecticut General Laws 1672, p. 6. In recognition of this principle,

---

[6] The defendant relies upon the fourteenth amendment to the constitution of the United States, which, in part, provides "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." He also relies upon the fifth amendment to the constitution of Connecticut, which provides, in part, that "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of . . . sex."

they also provided until 1959 that the father would be liable for only half of the "expense of lying-in and of support and maintenance of the child until the time of rendering judgment." Public Acts 1959, No. 639. In 1957 the statute, which had previously authorized the judgment for past support to run only in favor of the complainant mother, was amended to allow such a judgment to enter in favor of the state or town which had paid such expense. Public Acts 1957, No. 462. This amendment created the incongruity that, although a defendant father was jointly liable with the mother for assistance to the child granted by the state by virtue of the statutory predecessor[7] of General Statutes § 17-83e imposing such liability upon all parents, a judgment in a bastardy action could award the state only half of its debt. The statute was again amended in 1959 to allow the full amount of the expense for past support of the child to be charged against the defendant. Public Acts 1959, No. 639. The legislative history[8] of the 1959 amendment indicates that the change was made at the instance of the state welfare department, but the language of the amendment made no distinction between the state and the complainant with respect to the amount of the liability imposed.

We can see no unlawful discrimination based upon sex in the amendment of the statute which presently authorizes the state to obtain a judgment against the defendant which corresponds with his liability as a parent under § 17-83e. No one has ever

---

[7] Recoupment from the parents of a child supported by the state was first authorized in 1947, when the liability was conditional upon the parents having sufficient means to support the child and also having "other available funds or resources." Public Acts 1947, No. 498. The statute remained in this form until 1969 when § 17-83e was substituted, which imposes full liability on the parents of the child regardless of their financial circumstances. Public Acts 1969, No. 730 §§ 28, 40.

[8] 8 H.R. Proc., 1959 Sess., pt. 13, p. 5602.

suggested that the right of a creditor to obtain a judgment for the full amount of the debt against one of several debtors who are jointly liable violates the principle of equal protection of the laws. As a joint debtor the defendant would be entitled to contribution from the mother for any payments made in reduction of their joint obligation. *Azzolina* v. *Sons of Italy,* 119 Conn. 681, 692; *Waters* v. *Waters,* 110 Conn. 342, 345.

The fact that the statute appears to authorize the mother of an illegitimate child to obtain a judgment against the father for the full amount of support which she has previously furnished is the basis for the defendant's challenge of its validity. Were we dealing with such a judgment, we would find it difficult to deny this challenge. The judgment before us, however, rests upon separable statutory provisions inserted by an amendment which was enacted for the purpose of making the obligation owed to the state by the father of an illegitimate child coincide with that of the father of a legitimate child. This legislative objective ought not to be frustrated simply because another provision of the same statute, affording relief to a different claimant where other considerations of public policy would apply, is of doubtful validity. *Kellems* v. *Brown,* 163 Conn. 478, 496. "Where two or more parts of a statute are challenged, the test is whether they are so mutually connected and dependent as to indicate a legislative intent that they should stand or fall together." *Amsel* v. *Brooks,* 141 Conn. 288, 300–301. We can perceive no such intent here. As we have previously noted, the state has an independent right to pursue its claim in a paternity action and is not subject to every infirmity which might affect the separate claim of the mother. A judgment for one party cannot be upset because it would be defective if rendered in favor of another.

Although the point has not been raised by counsel, one aspect of the judgment before us which might be thought to bear consequences beyond those imposed by § 17-83e upon the parents of legitimate children or upon the complainant mother is the order for weekly payments upon the amount of the obligation for past support of the child found to be owed by the defendant. Section 52-442 provides for jailing the defendant if he fails to comply with such an order, but § 17-83e contains no such provision. General Statutes § 17-82e, however, does provide for enforcement of a retrospective liability for support against any parent in the same manner as an order of support issued by a court. We conclude, therefore, that the judgment under review does not violate the right of the defendant to equal protection of the laws.

## IV

The defendant also claims that the orders of $10 per week for current support of the child and $4 per week upon the judgment for past support were unreasonable in view of the subordinate facts found by the court relating to his financial condition. The finding states that the defendant had weekly expenses of $163.75 at the time of the hearing, but that his weekly net pay was only $130. One of the items included in the list of weekly expenses was a payment of $27.50 upon a loan of $700 from a friend. His total indebtedness was $1300. His assets consisted of a bank deposit of $150 and a 1973 Mercury automobile valued at $1600. The court also found as a subordinate fact that the defendant's financial ability was such that he could pay the weekly orders.

The defendant urges that the finding of ability to pay is really a conclusion inconsistent with the subordinate facts found, which indicate that his

expenses at the time of the hearing exceeded his income. It is clear from the form in which the two paragraphs are set forth in the finding that they were intended to stand as subordinate facts, because reference is made to supporting evidence on certain pages of the transcript. In his brief the defendant has not pressed his assignment of error that these paragraphs were found without evidence, so we may regard that assignment as abandoned. The finding of ability to pay the amounts ordered is not inconsistent with the fact that the defendant's expenses exceeded his income at the time of the hearing. Some of those expenses might well have been reduced, such as the loan payment or the rental payment, which was approximately double the amount allowed for shelter of the complainant mother and her child by the state welfare department. The defendant had sufficient cash to pay the order for about ten weeks in any event. In entering a support order the court need not regard as sacrosanct the style of living to which a defendant may be accustomed or give priority to the creditors he has chosen to pay. The support orders entered in this case are well within the limits of reasonable discretion vested in the trial court with respect to such matters. *Turner* v. *Richardson,* 147 Conn. 423, 426; *Hellman* v. *Karp,* 93 Conn. 317, 324.

The defendant has also challenged the conclusion of the court that the complainant mother was indigent, which was based upon the fact that she was a recipient of state welfare. In the absence of other facts—and the defendant seeks to add none to the finding—her eligibility for state welfare was a sufficient basis to support such a conclusion. Another conclusion under attack is that the defendant's ability to pay need not be considered in order to render a civil judgment. It is obvious that this statement referred to the total amount of the liabil-

ity imposed by the judgment and not to the periodic orders which did take into consideration the financial circumstances of the defendant.

There is no error.

In this opinion PARSKEY and SPONZO, Js., concurred.