DWIGHT BUILDING COMPANY *v.* STAMFORD
HOUSE WRECKING COMPANY
(12104)

PETERS, PARSKEY, SHEA, GRILLO and DALY, Js.

Argued April 4—decision released May 29, 1984

*Peter J. Ottomano,* with whom, on the brief, was *Paul E. Pollock,* for the appellant (defendant).

*Philip R. Shiff,* for the appellee (plaintiff).

GRILLO, J. The facts relating to a consideration of the issues involved in this appeal are not in dispute: The plaintiff, Dwight Building Company, is a general building contractor that employed Manuel Lopes Borges as a manual laborer. The defendant, Stamford House Wrecking Company, was engaged by Dwight as a subcontractor under the terms of a written contract. That contract provided, inter alia, that the defendant would indemnify and save harmless Dwight from all liability for personal injuries including death "sustained by any other persons or corporations whatsoever, including Contractor's or Owner's employees, caused or alleged to have been caused, directly or indirectly, by any act or omission, negligent or otherwise, on the part of Subcontractor, or its Subcontractors, or persons directly or indirectly employed by them and arising out of the performance, or in any way connected with the performance, of this contract, even though some act or omission, negligent or otherwise, of Owner or Contractor or persons directly or indirectly employed by them may also be a cause or an alleged cause of such injury."[1]

In the course of his employment, on January 30, 1971, Borges sustained fatal injuries which were caused by the defendant's negligence. As a result of the death of Borges, Dwight became obligated to pay workmen's compensation benefits to Maria Borges, the widow of the deceased, as provided by the finding and award of the workmen's compensation commissioner.[2] Thereafter, Maria Borges, as administratrix of the estate of Manuel Borges, brought suit against the defendant to recover damages for the injuries to and death of her

[1] We note that this provision appears in the contract at Section XVI which, in a separate paragraph therein, also provides that the subcontractor "shall purchase Workmen's Compensation Insurance, Public Liability Insurance, and Property Damage Insurance under this contract."

[2] Public Acts 1979, No. 79-376 replaced "workmen's compensation act" with "workers' compensation act."

husband, alleged to have been caused by the negligence of the defendant in the performance of its work for Dwight. Dwight filed an intervening complaint to recover workmen's compensation which it had paid and which it was obligated to pay pursuant to the finding and award of the workmen's compensation commissioner by reason of the injuries to and death of Manuel Borges. That action resulted in a verdict and judgment in favor of Maria Borges in the sum of $75,000. *Borges v. Stamford House Wrecking Company,* Superior Court, Judicial District of New Haven, Docket No. 133645.

Upon rendering judgment on the verdict, the court in *Borges* apportioned the award between the plaintiff, Maria Borges as administratrix, and the intervening plaintiff, Dwight Building Company, pursuant to the provisions of § 31-293.[3] It found that the plaintiff, Maria Borges, had incurred attorney's fees and costs in bringing the personal injury wrongful death action against

---

[3] General Statutes § 31-293 provides: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other persons, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he had paid or has become obligated to pay as compensation to such injured employee . . . . If such employer and employee join as parties plaintiff in such action and any damages are recovered, such damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of such recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting such recovery. The rendition of a judgment in favor of the employee or the employer against such party shall not terminate the employer's obligation to make further compensation, including medical expenses, which the compensation commissioner thereafter deems payable to such injured employee."

the defendant in the amount of $26,734.85. The *Borges* court further found that, as a result of Manuel Borges' death, Dwight had expended $24,221.50 in workmen's compensation benefits as of the date of the apportionment and that based upon the life expectancy of Maria Borges, it would expend in the future an additional $104,832 which had a present value (discounted at 6 percent) of $52,423.90. Accordingly, the court apportioned the verdict of $75,000 as follows: $26,734.85 to Maria Borges to reimburse her for the attorney's fees and costs of bringing the suit, $24,221.50 to Dwight for the workmen's compensation benefits which had been paid to date of the judgment, and the balance of $24,043.65 to Dwight to be applied to future workmen's compensation benefits.

The amount of the judgment recovered by Dwight in the *Borges* suit was less than the amount which it had paid and was required to pay as workmen's compensation pursuant to the finding and award of the workmen's compensation commissioner. Thus, Dwight subsequently instituted this suit for indemnification under the aforesaid contract. It seeks to recover the difference between the amount of workmen's compensation it has paid and will be obligated to pay the widow as a result of the death of Borges less those amounts that it received when the court made its apportionment award in the *Borges* case. The parties have stipulated that sum to be $32,792.

The defendant asserts that the trial court, rendering judgment for Dwight, erred when it found that Dwight's cause of action was not barred by the doctrine of res judicata and when it held that the plaintiff's cause of action was not exclusively within the provisions of the Workmen's Compensation Act. We agree with the trial court and find no error.

"It is . . . fundamental that in order to make a judgment res adjudicata as regards the issues determined in it the person claimed to be bound by it should have been a party to the first action in the same capacity that he is to the second." (Citations omitted.) *Hartford National Bank & Trust Co.* v. *Malcolm-Smith,* 129 Conn. 67, 70, 26 A.2d 234 (1942); *Lechner* v. *Holmberg,* 165 Conn. 152, 156, 328 A.2d 701 (1973). "A judgment in favor of either the plaintiff or the defendant is conclusive, in a subsequent action between them on the same or a different claim, with respect to any issue actually litigated and determined if its determination was essential to that judgment." 1 Restatement (Second), Judgments § 17 (3). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Id., § 27.

The provisions of § 31-293 make it patently clear that the employer's right to recover in *Borges* was predicated upon a statutory right of subrogation rather than upon a contractual theory of liability. Dwight's right to recover in *Borges* was a derivative rather than an independent one. As an intervening employer in *Borges,* Dwight's right to recovery was limited. Under no circumstances could its recovery exceed the amount it was obligated to pay to Borges under the provisions of the Workmen's Compensation Act. See *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 678, 47 A.2d 187 (1946).

In contrast to *Borges,* where Dwight was pursuing its statutory right of subrogation, the present action is based on a contract. As the trial court correctly observed: "[E]ven if the defendant was not liable to the plaintiff for the compensation benefits paid as a result of the employee's death [because of failure of the

administratrix to prove her case in *Borges*] . . . it could still be liable under the terms of the contract." Stated differently, in *Borges* the sine qua non of the intervening plaintiff Dwight's right to be reimbursed for the workmen's compensation benefits it was obligated to pay, was the successful prosecution of the negligence action by the plaintiffs.[4] In *Borges,* contributory negligence (now comparative negligence) could also have been a factor in the determination of liability and damages. Under the indemnity contract, however, the defendant had undertaken broad exposure for potential liability whenever the defendant caused the death "directly or indirectly by any act or omission, negligent or otherwise . . . even through some act or omission, negligent or otherwise [of the employee] . . . may also be a cause or an alleged cause of the injury."

The defendant faults Dwight for not attempting in *Borges* to raise its right to recovery under the indemnification agreement. The limited purpose of Dwight's appearance in that action precluded the procedure advocated by the defendant. In *Duffy* v. *Bishop Co.,* 99 Conn. 573, 122 A. 121 (1923), this court specifically rebuffed an attempt by the defendant contractor, in a negligence action brought by a subcontractor's employee in which the subcontractor intervened, to inject into the case a claim by the defendant that the subcontractor had contracted with the defendant to be solely answerable for all damages in any way arising out of the work. We held that the action was purely for negligence, that the compensation act was in no way involved except for the particular section which called for the joinder of the immediate employer as coplain-

---

[4] The plaintiff employer had a right to take part in the trial insofar as the issue as to liability and damages to the estate was concerned. See *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 680, 47 A.2d 187 (1946).

tiff, and, hence, that any question concerning the contract of indemnity between the defendant and such employer was not involved in the case. Id., 581–82.

In the present case, Dwight asserts its own independent cause of action. It appears in a different capacity from its limited status in the *Borges* case. The issues pursued in *Borges* were different and Dwight appeared in a different capacity than it did in the present proceedings. Thus, its cause of action is not barred by the doctrine of res judicata.

In pursuing its second claim that Dwight's cause of action was exclusively within the provisions of the Workmen's Compensation Act, the defendant, referring to the award against it in *Borges,* contends that "[t]he defendant has paid its debt and should not be made to pay again." The debility of this proposition is that the award to the intervening plaintiff, via apportionment, did not satisfy the obligation of the defendant to indemnify Dwight.

In a case strikingly similar factually to the present case, an argument resembling the one advanced by the defendant in this case was employed. In *Bar Steel Construction Corporation* v. *Read,* 277 A.2d 678 (Del. 1971), an all-inclusive indemnification agreement was entered into by the general contractor and the subcontractor to hold the general contractor Cayuga harmless from any claim for personal injury or death. Read, an employee of the general contractor, was subsequently killed. Cayuga's workmen's compensation carrier Globe paid benefits to Read's widow. Globe then brought suit against the subcontractor Bar to recover compensation paid by it. Mrs. Read also brought an action in negligence against the subcontractor. In its defense, the defendant stated that, under the Delaware workmen's compensation law, Globe was subrogated to the rights of Read and that since Read was con-

tributorily negligent, Read could not recover against Bar, and, therefore, neither could Globe. The Supreme Court of Delaware found that this argument lacked merit. "By reason of the express agreement of the parties, the situation is controlled by the indemnification clause upon which Globe's cause of action is based. It follows that the case is not covered by the Workmen's Compensation Law." Id., 680.

There is no error.

In this opinion the other judges concurred.