[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court when Joseph L. Olbrys (plaintiff) appealed from a decision of the Waterford Zoning Board of Appeals (ZBA) which overruled a decision of the Zoning Enforcement Officer (ZEO) issuing a zoning compliance permit to him.
The defendants claim the key issue presented in this appeal is whether there is sufficient basis to judicially overrule the unanimous decision of the Zoning Board of Appeals that a certain pole barn building on residential property owned by the plaintiff does not constitute a valid accessory building or accessory use under the zoning regulations.
The plaintiff raises seven issues in his brief. First he claims a previous action (Docket No. CV91-0516886) is res judicata as to the question of whether or not the plaintiff is in compliance with the Waterford Zoning Regulations. Second, the plaintiff claims that the judgment in that previous action when combined with the Zoning Board of Appeals action on the 92-016 Zoning Compliance Permit together constitute res judicata as to the plaintiff's compliance with the Zoning Regulations. Third, the plaintiff claims that his appeal should be sustained because the Zoning Board of Appeals action is contrary to their own regulations. The fourth and sixth issues raised by the plaintiff claim that the Board's action is not supported by the record and is contrary to the evidence before the Board. The fifth issue raised is similar to or the CT Page 10906 same as prior statements of issues relating to a claimed inconsistency with prior decisions. The seventh issue framed by the plaintiff (Plaintiff's Brief, p. 29) is also similar to the third issue that the ZBA decision is not consistent with the Zoning Regulations, but adds a reference to Connecticut General Statutes § 8-7.
The parties are all represented by counsel and filed extensive briefs before this court in pursuit of the claims made on their respective positions.
A hearing was held after due notice on October 13, 1994, at which all parties were well represented. Evidence was presented by the plaintiff with regard to the issue of aggrievement. The defendants did not contest the issue of aggrievement. No other evidence was offered. Oral argument was had by the parties on the issues.
On the basis of the evidence introduced through the testimony of Joseph L. Olbrys the court finds that at all times relevant to this case the plaintiff is and has been the owner and applicant with respect to the matter at issue and has expended funds in pursuit of the application. The court finds the plaintiff to be aggrieved.
FACTUAL BACKGROUND
The facts do not appear to the court to be really in dispute. The following facts may be found in the Record.
The subject property is on a residential lot located in an R-20 Medium Density Zoning District under the Waterford Zoning Regulations. The zoning regulations for the R-20 District allow one family dwellings and accessory uses as defined in Sections 1.1 and 1.2 and subject to the provisions of Sections 3.9 and 3.10 of the Regulations. Section 1.2 of the Regulations defines an accessory use as requiring satisfaction of 4 elements as follows:
 1. That the use be subordinate in connection with the main building or use;
 2. That the use be clearly incidental in connection with the main building or use; CT Page 10907
 3. That the use be customary in connection with the main building or use; and
 4. That the use be on the same lot with the main building or use. (Emphasis added.)
Section 1.1 of the applicable regulations defines "accessory building" to mean a detached subordinate building, the use of which is incidental to and customary in connection with the main building or use, and which is located on thesame lot with such main building or use. An accessory building shall be one which is not attached to the main building by any covered porch, breezeway or other roofed structure. (Emphasis added.)
To the extent applicable, Sections 3.9 and 3.10 provide that the following are deemed to be accessory uses:
 3.9.2. Garage or carport for one commercial vehicle, truck, tractor, piece of earth moving equipment or commercial tools for personal or business use, . . .
 3.9.8. Tool shed, greenhouses, arbors, garden houses.
The building in issue is a large pole barn type structure with dimensions of 60 feet by 30 feet and containing 1800 square feet. The single family residential dwelling which was claimed by the plaintiff to be the main building and use contains 1110 square feet; so that the planned accessory building and use is 62% larger than the main building or use. No zoning regulation, however, limits the size of accessory buildings. The plaintiff operates an off-site construction business from other property and he plans to use the pole barn building at 65 Clark Lane for the storage of some of his construction equipment which at the time of the ZBA hearing consisted of a bulldozer, tractor, backhoe and truck. This equipment which is shown in the photograph in the record as stored at the pole barn site is the same equipment that the plaintiff uses on his various construction jobs at other places such as Northeast Utilities. The plaintiff at the ZBA hearing admitted that he is building the pole barn structure for the purpose of keeping at least some of his business equipment there and that he does not reside at the property. CT Page 10908 A separate means of ingress and egress exits for vehicles to pass to and from the pole barn through a separate vacant lot at 67 Clark Lane, as distinguished from the subject lot on which the single family dwelling and the pole are both located at 65 Clark Lane. The single family dwelling at 65 Clark Lane is not used as a residence by the plaintiff. He lives elsewhere.
After the hearing, the Zoning Board of Appeals voted by a 5-0 unanimous vote to sustain the defendants Miner's appeal and overrule the action of the Zoning Enforcement Officer in issuing the zoning compliance permit to the plaintiff. The reasons given by the ZBA were as follows:
 1. The alleged accessory use/building fails to meet the definition of an accessory use/building under Sections 1.1 and 1.2 of the Regulations, in that:
 a) the use/building is not "incidental to the principal use because the occupant of the principal use is not utilizing the alleged accessory use/building and is not associated professionally, personally or otherwise with the building or the uses originating therefrom;
 b) the use/building is not "subordinate" to the principal use because it is of equal or greater importance to the owner of the property and does not "serve" the principal use in any way; and
 c) the use/building, in the view of the Board, does not represent a use or building which is "customary" in the community in connection with a single family residence.
 2. Based on the record presented to it, the Board does not believe the use/building meets any of the tests set forth in Section 3.9 of the Regulations: "Accessory Uses in Residential Zoning Districts"."
At the oral argument before this court, without objection the court took judicial notice of two previous cases dealing with the subject property. Docket No. CV91-516886 which was an action by the Town of Waterford requesting an injunction CT Page 10909 against the defendant Joseph L. Olbrys concerning the use of certain property at 67 Clark Lane, Waterford, Connecticut for the storage of construction equipment. That case ended by virtue of a stipulated judgment which provided, in pertinent part, as follows:
 Judgment may enter . . . as against the defendant Joseph L. Olbrys with regard to the property known as 67 Clark Lane . . . the defendant has complied with Town of Waterford lot design standards and pole barn design standards as per the defendant's revised plan received by the town on May 9, 1991, and submitted into court file on the above date . . . the defendant shall apply for a final zoning compliance permit within thirty (30) days of the date of judgment . . . a permanent injunction shall enter restraining the defendant from personally operating any business or allowing other individuals to operate a business out of the accessory structure without appropriate permits or proper permits at the subject property at 67 Clark Lane . . . the defendant shall be allowed to have one commercial vehicle located in the said accessory structure . . . the storage of any other commercial vehicles, trucks or earth moving equipment, as well as construction and related equipment, debris, etc. will be a violation of this injunction . . .
The court also took judicial notice of the case entitledMiner v. Waterford Zoning Board of Appeals, Superior Court, District of New London, Docket No. CV92-0523813 (January 15, 1993), which involved an appeal by Miner from the ZBA's denial of a Zoning Compliance Permit 92-016, and the overruling of the granting of the same by the ZEO. The dispute of the plaintiff in that action related to the language contained in the ZBA decision of July 9, 1992, by which it (after reaching the result indicated above) also said, "furthermore, the Zoning Board of Appeals sustains the interpretation of the Zoning Enforcement Officer(s) that the proposed "pole barn" is an acceptable accessory building within the meaning of the current Waterford Zoning Regulations."
The Miners were concerned, their attorney has said at oral argument, about the possible claims which could be made CT Page 10910 later about this unnecessary language he called "dicta" by the ZBA. That case was dismissed by memorandum of decision on January 15, 1993. The Appellate Court of the State of Connecticut declined to grant certification of an appeal on March 9, 1993. The trial court in that case appeared to conclude that the plaintiffs suffered no harm from the decision of the ZBA since the permit itself was not granted and their objection to the same had been sustained by the ZBA. The defendant Miner in this case now claims that the language relating to the ZBA's decision on Zoning Compliance Permit 92-016 was dicta and that was the reason for the decision of the trial court in that case.
The photographs in the record, which were introduced at the ZBA hearing, are instructive as to the size of the building, the size of construction equipment generally located on the premises at the time of the photograph and of the general neighborhood and the accessory buildings in the neighborhood. Both the engineer's plan, which was Exhibit B at the ZBA hearing, and the Accessor's map, which was Exhibit T, provide assistance with regard to the layout of the land and the proposed construction of the alleged "accessory" building in question. It is also apparent that some construction had already been done prior to the ZBA hearing.
The issue presented to the ZBA in this case was whether the structure in question qualified as a valid accessory building or use in connection with the single family dwelling on the lot at 65 Clark Lane.
As indicated above, Section 1.1 of the Regulations defines an accessory building as follows:
ACCESSORY BUILDING
 A detached subordinate building, the use of which is incidental to and customary in connection with the main building or use, and which is located on the same lot with such main building or use. An accessory building shall be one which is not attached to the main building by any covered porch, breezeway, or other roofed structure.
Section 1.2 of the Regulations defines an accessory use as follows: CT Page 10911
ACCESSORY USE
 A subordinate use which is clearly incidental to and customary in connection with the main building or use and which is located on the same lot with such main building or use.
Our Supreme Court case of Lawrence v. Zoning Board of Appeals,158 Conn. 509, 264 A.2d 552 (1969), concerned accessory building and use regulations very similar to the Waterford regulations. In Lawrence, the Supreme Court handed down helpful and specific guidelines to apply here.
The Court stated at pages 511-512:
 A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. Fox v. Zoning Board of Appeals, 146 Conn. 70, 73, 147 A.2d 472. The words employed are to be interpreted in their natural and usual meaning. See State ex rel. Higgins v. Civil Service Commission, 139 Conn. 102, 114, 90 A.2d 862. The ordinance in question defines an accessory use as one which is subordinate and customarily incidental to the main building and use on the same lot. The crucial phrase "customarily incidental" is typically present in this type of legislation. 1 Anderson, American Law of Zoning § 8.26. While the necessity for permitting accessory uses must be admitted, the objectives of the comprehensive plan will be jeopardized if "accessory use" is so broadly construed as to allow incompatible uses to invade the district. Ibid.
 In the Fox decision, supra, 74, we had occasion to define accessory use as `a use which is customary in the case of a permitted use and incidental to it. 1 Yokley, Zoning Law Practice (2d Ed.) § 64 Ann. Cum. Sup. An accessory use under a zoning law is a use which is dependent on or pertains to the principal or main use. 58 Am.Jur. 969, [Zoning,] § 46, Ann. Cum. Sup.' An CT Page 10912 expansion of this definition may be of assistance to our determination of the instant appeal.
The Supreme Court then went on to analyze the meaning and method of application of the elements in the accessory use and building regulations.
The first element is whether the building or use which is at issue is subordinate and incidental in connection with the main building or use. The Supreme Court provided the following analysis at page 512:
 The word "incidental" as employed in a definition of "accessory use" incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. Indeed, we find the word "subordinate" included in the definition in the ordinance under consideration. But "incidental," when used to define an accessory use, must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant. To ignore this latter aspect of "incidental" would be to permit any use which is not primary, no matter how unrelated it is to the primary use.
The next element which was evaluated is whether the building or use which is at issue is customary in connection with the main building or use. The Supreme Court provided the following analysis at pages 512-513:
 The word `customarily' is even more difficult to apply. Although it is used in this and many other ordinances as a modifier of `incidental,' it should be applied as a separate and distinct test. Courts have often held that use of the word `customarily' places a duty on the board or court to determine whether it is usual to maintain the use in question in connection with the primary use of the land. See 1 Anderson, loc. cit. In examining the use in question, it is not enough to determine that it is incidental in the two meanings of that word as discussed above. The use must be further CT Page 10913 scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably associated with the primary use. As stated in 1 Rathkopf, Zoning Planning (3d Ed.), p. 23-4: `In situations where there is no . . . specific provision in the ordinance, the question is the extent to which principal use as a matter of custom, carries with it an incidental use so that as a matter of law, in the absence of a complete prohibition of the claimed incidental use in the ordinance, it will be deemed that the legislative intent was to include it.'
 In applying the test of custom, we feel that some of the factors which should be taken into consideration are the size of the lot in question, the nature of the primary use, the use made of the adjacent lots by neighbors and the economic structure of the area. As for the actual incidence of similar uses on other properties, geographical differences should be taken into account, and the use should be more than unique or rare, even though it is not necessarily found on a majority of similarly situated properties. See 1 Rathkopf, op. cit., pp. 23-25, 23-26.
In applying these rules the Supreme Court pointed out that the determination by the ZBA of the applicability of the regulations is within the sound discretion of the ZBA and:
 "[i]n applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. Toffolon v. Zoning Board of Appeals, 155 Conn. 558, 560, 236 A.2d 96." Lawrence v. ZBA, supra, 158 Conn. 514.
The court also stated that the determination of the existence of an accessory use "is one peculiarly within the knowledge of the local board." Id.
When applying those governing principles to the case at bar, and after considering the facts in the Record and the arguments of counsel, it becomes clear that no "accessory" use CT Page 10914 or building is contemplated by the plaintiff's application.
The building at issue misses the mark for a number of reasons. An examination of the pictures of the appearance of the proposed pole barn type building of 60 feet by 30 feet readily demonstrates that it is not a garage or carport. Second, the size of the building itself would be far in excess of what is appropriate for a "customary" garage or carport. Moreover, the plaintiff has admitted at the ZBA hearing that the purpose of the building is to house his off-site business vehicles or one of them. Since the building use has no connection to the single family dwelling on the lot, and is to be used for the owners off-site business equipment, it is in direct conflict with the basic concept of an accessory use. It is not "subordinate." It is not "incidental." It is not "customary."
Based on the foregoing, it is found by this court that the ZBA had ample basis in the record to find that the alleged accessory building did not satisfy the definitions under Section 1.1 and 1.2 of the Regulations, and to support its reasons.
Where the ZBA acts within its statutory authority, the decision of the ZBA can be overruled by a court, only if the ZBA has not acted "fairly, with proper motives and upon valid reasons." Petrillo v. ZBA, 147 Conn. 469, 473, 162 A.2d 508
(1960). The court cannot make its own determination of questions of fact and substitute its judgment for the wide discretion of the local land use agency. Whittaker v. ZBA,179 Conn. 650, 654, 427 A.2d 1346 (1980); Horn v. ZBA,18 Conn. App. 674, 677 559 A.2d 1147 (1989). The reasons given by the ZBA do not have to be meticulous and detailed, bearing in mind that they are lay people, as long as they give the reason and basis for the decision. DeMars v. ZoningCommission, 142 Conn. 580, 584, 115 A.2d 653 (1955); Daughtersof St. Paul Inc. v. ZBA, 17 Conn. App. 53, 68, 549 A.2d 1076
(1988).
In a land use appeal, the appellants have the burden of proof that the agency acted improperly. Adolphson v. ZBA,205 Conn. 703, 707, 535 A.2d 799 (1988).
Reviewing the record, the governing law and the standards for the judicial review, the court does not find merit in the CT Page 10915 plaintiff's claim that the ZBA acted contrary to the regulations, or that the reasons given were not supported by the record or were contrary to the record or the statutes.
The plaintiff in his argument and brief also urges the court to consider the prior two actions referred to above and their relationship to the instant application. The plaintiff uses the term "res judicata" in his effort to suggest that the Zoning Board of Appeals should be somehow bound to follow the exact language utilized in the two prior cases. The plaintiff selects particular phraseology from the two cases to make his point.
With regard to the first issue raised in the plaintiff's brief with regard to the stipulated judgment of November 8, 1991, it is sufficient to indicate that neither the Zoning Board of Appeals nor the defendants Miner were parties to that action and the doctrine of res judicata may not be applied.Dwight Building Co. v. Stamford House Wrecking Co., 193 Conn. 297,301, 476 A.2d 568 (1984).
With regard to issue number two briefed by the plaintiff (Plaintiff's Brief, p. 8-16) it would be a strained interpretation of the concept of res judicata to permit the plaintiff to utilize a superfluous interpretation of the Zoning Board of Appeals in that case and ignore the fact that the Zoning Board of Appeals denied the accessary [accessory] use permit.
When reviewing the application for a Zoning Compliance Permit in the prior case (which was exhibit F at the ZBA hearing and is part of this record) the ZBA made the following determination:
 a) Because the "pole barn" was on a different lot from the single family residence "main building or use" to which it is purportedly accessory, Zoning Compliance Permit No. 92-016 should not have been issued and we hereby sustain the appeal and overrule the action of the Zoning Enforcement Officer(s) in issuing said permit.
 b) Furthermore, the Zoning Board of Appeals sustains the interpretation of the Zoning Enforcement Officer(s) not the proposed "pole barn" CT Page 10916 is an acceptable accessory building within the meaning of the current Waterford Zoning Regulations as revised on October 8, 1991 provided a valid Zoning Compliance Permit is issued.
First, the plaintiff appears to claim that both paragraph a and paragraph b comprise the "decision" of the Waterford Zoning Board of Appeals. Secondly, the plaintiff claims, that subparagraph b of that alleged decision constituted a "ruling" by the ZBA that the building proposed in the instant application with the uses contemplated as indicated in this record was a valid accessory building and use.
The plaintiff is relying on decisions such as Mynyk v.Board of Zoning Appeals, 151 Conn. 34, 193 A.2d 519 (1963) to the effect that a zoning authority may not reverse a prior decision without a change in conditions or indication that other circumstances materially affecting the merits of the subject matter had intervened.
The short answer to that claim is first that paragraph b did not constitute part of the "decision" of the ZBA at that time, and, second, if it did constitute part of the decision the language does not suggest that the ZBA was at that time giving its approval to the proposed uses contemplated by the plaintiff. In fact, it appears to this court that the language is equally susceptible of an interpretation which suggests that the ZBA was only indicating that a "pole barn" type of construction would be permissible as an accessory building if it otherwise complied with the zoning regulations so as to be entitled to obtain a "valid zoning compliance permit." Moreover, the third reason that this argument of the plaintiff is not persuasive is that it is not clear from the record here that the circumstances and factual information available to the ZBA have not changed materially since the earlier case so as to bring themselves within the Mynyk rule.
For these reasons the appeal of the plaintiff is dismissed.
Leuba, J. CT Page 10917