[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Thomas Rywolt, appeals from a final administrative decision of the defendant, State Department of Social Services (hereinafter referred to as DSS), wherein DSS upheld the placement of a lien in the amount of $22,460.30, pursuant to General Statutes § 17b-94 (a), against the proceeds of a pending personal injury action filed by Rywolt for injuries he suffered in a car accident.
On September 27, 1994, the State Department of Human Resources (hereinafter referred to as DHR) filed a paternity petition against Rywolt. On May 17, 1995, a family support magistrate entered an order finding Rywolt to be the biological father of the two children in question and ordered Rywolt to begin making child support payments.[1] A family support magistrate subsequently entered a final arrearage finding in the paternity action setting Rywolt's arrears, based on his ability to pay, at $8,340.93 for reimbursement of Aid to Families with Dependent Children (hereinafter referred to as AFDC), payments that had been made to the children's mother, Rosemarie Patton. (Return of Record, [ROR] p. 28.)
On July 29, 1998, the State Department of Administrative Services (hereinafter referred to as DAS) formally notified Rywolt that the state had placed a lien, pursuant to General Statutes § 17b-94 (a), for an undetermined amount, on any proceeds realized by Rywolt in a pending personal injury action filed by Rywolt. (ROR, pp. 12-13.) DAS then notified Rywolt on January 4, 1999, that DSS set the Lien amount at $22,460.30. This amount CT Page 2673 reflected the combined AFDC payments of $16,312.49 made to Patton, minus $1,052.38 previously reimbursed by Rywolt, plus $7,200.19 in AFDC payments made to Gail Andrews on behalf of a third child of Rywolt. (ROR, p. 14.)
Pursuant to General Statutes § 17b-60, Rywolt requested and received a "fair hearing" in which he challenged the amount of the lien. In support of his challenge, Rywolt argued that the amount he owed for AFDC payments made to Patton was $8,340.93, the amount set as his arrearage, based on his ability to pay, by a family support magistrate and the Bureau of Child Support Services. (ROR, p. 28).[2] The hearing officer rejected this argument and upheld DSS' decision to place the lien for $15,260.11 in AFDC payments made to Patton and $7,200.19 made to Gail Andrews, bringing the total amount of the lien to $22,460.30. (Return of Record, pp. 1-3.)
General Statutes § 17b-60 and § 4-183 (Uniform Administrative Procedure Act (UAPA)) govern appeals taken from a decision of the Commissioner of Social Services to the Superior Court. "It is well established that the right to appeal an administrative action is created only by statute and a party must exercise that right in accordance with the statute in order for the court to have jurisdiction." New England Rehabilitation Hospital Inc. v.CHHC, 226 Conn. 105, 120, 627 A.2d 1257 (1993).
"Pleading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal." New EnglandRehabilitation Hospital Inc. v. CHHC, supra, 226 Conn. 120; see also Park City Hospital v. Commission on Hospitals Health Care,210 Conn. 697, 702-703, 556 A.2d 602 (1989). Aggrievement is determined by the application of a two part test. "First, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and internal quotation marks omitted.) New England RehabilitationHospital Inc. v. CHHC, supra, 226 Conn. 121.
In the present case, Rywolt disputes the amount of cash assistance, $15,260.11, which the State claims is due for AFDC benefits paid to Patton and argues that the DSS hearing officer CT Page 2674 "ignored and gave no effect to the finding of the family support magistrate" that set Rywolt's arrearage at $8,340.93. (Plaintiff's Brief, p. 4.) Therefore, with respect to aggrievement, Rywolt alleges that the placement of the lien by DSS in the amount of $22,469.30 was unreasonable and arbitrary.
It is found that Rywolt has a specific, personal and legal interest in the subject matter of the decision, i.e., how much money he owes the state. The court further finds that Rywolt's interests have been adversely affected by the decision setting said amount owed at $15,260.11 regarding AFDC payments made by DSS to Patton, instead of the $8,340.93 the family support magistrate and Bureau of Child Support Services set as his arrearage.
General Statutes § 4-183 (c) provides, in pertinent part, that "[w]ithin forty-five days after . . . [mailing] of the final decision [of the agency] under [section 4-180] . . . a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office or at the office of the Attorney General in Hartford and file the appeal with the clerk of the superior court for the judicial district of Hartford or for the judicial district wherein the person appealing resides. . . . Service of the appeal shall be made by (1) United States mail, certified or registered, postage prepaid, return receipt requested, without the use of a sheriff or other officer. . .
The parties do not dispute that DSS issued a final administrative decision which was forwarded to Rywolt via certified mail on April 13, 1999. Rywolt then effectuated service on DSS via certified mail pursuant to General Statutes § 4-183 (c) on May 25, 1999 and on the offices of the Attorney General and DAS via certified mail on May 25, 1999, and May 26, 1999, respectively.
It is found that April 13, 1999 was the date the final decision of DSS was mailed to Rywolt pursuant to General Statutes § 4-180
(c). Therefore, Rywolt commenced this appeal in a timely manner by service of process upon the proper parties.
"The standard of review in appeals from the decisions of administrative agencies is clearly delineated . . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial CT Page 2675 court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given a statute by the agency charged with its enforcement. . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Brackets omitted; citations omitted; internal quotation marks omitted.) State Board of Labor Relations v. Freedom ofInformation Commission, 244 Conn. 487, 493-94, 709 A.2d 1129
(1998).
The court's review of this appeal is governed by the UAPA which limits the scope of judicial review of administrative agency decisions. See State Board of Labor Relations v. Freedom ofInformation Commission, supra, 244 Conn. 493-94. General Statutes § 4-183 (j) provides, in pertinent part, that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The plaintiff appeals from the decision of the DSS hearing officer on the grounds that the hearing officer failed to give collateral estoppel effect to the family support magistrate's order setting Rywolt's arrearage at $8,340.93. Collateral estoppel, or issue preclusion, "prevents a party from relitigating an issue that has been determined in a prior suit." (Emphasis added.) Nancy G. v. Dept. of Children and Families,248 Conn. 672, 681 (1999). "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action . . . ." (Citation omitted; emphasis in original.)Willard v. Travelers Ins. Co., 247 Conn. 331, 337, 721 A.2d 894
CT Page 2676 (1998). Under collateral estoppel a party to an action is not bound by the judgment in a previous action unless that party was "a party to the first action in the same capacity that he is to the second [action]." (Emphasis added.) Dwight Building Co. v.Stamford House Wrecking Co., 193 Conn. 297, 301, 476 A.2d 563
(1984).
Paternity cases before family support magistrates are primarily concerned with establishing paternity and enforcing child support payments based on the father's ability to pay. General Statutes §§ 46b-160 et seq. was the statutory scheme relied upon in the paternity and support action against Rywolt, more specifically General Statutes § 46b-171 (a), which states in pertinent part: "If the defendant is found to be the father of the child, the court or family support magistrate shall order him to stand charged with the support and maintenance of such child, with the assistance of the mother if she is financially able, as the court finds . . . to be reasonably commensurate with the financialability of the defendant. . . ." (Emphasis added.)
An AFDC reimbursement action by DSS is brought pursuant to General Statutes § 17b-93[3] et seq. General Statutes § 17b-93
(a), states in pertinent part: "If a beneficiary of aid under the . . . aid to families with dependent children program . . . acquires property of any kind or interest in any property, estate or claim of any kind . . . the state of Connecticut shall have a claim subject to subsections (b) and (c) of this section, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid, subject to the provisions of section 17b-94, to him or in his behalf under said programs; and, in addition thereto,the parents of an aid to dependent children beneficiary . . .shall be liable to repay, subject to the provisions of saidsection 17b-94, to the state the full amount of any such aid paidto or in behalf of either parent, his spouse, and his child orchildren. The state of Connecticut shall have a lien againstproperty of any kind or interest in any property, estate or claim of any kind of the parents of an aid to dependent children beneficiary, in addition and not in substitution of its claim,for amounts owing under any order for support of any court or anyfamily support magistrate, including any arrearage under suchorder. . . . (Emphasis added.)
In the present case, Rywolt argues that the DSS hearing officer failed to consider and give effect to the family support CT Page 2677 magistrate's determination in the previous action wherein Rywolt's arrearage, regarding support payments to Patton, was set at $8,340.93. He further argues that the hearing officer should have given collateral estoppel effect to the family support magistrate's determination based on State v. Ellis,197 Conn. 436, 464-65, and In Re Juvenile Appeal, 190 Conn. 310, 316. In both of those cases, the majority opinions state that collateral estoppel "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . ." (Emphasis added.) Rywolt then argues that because the family support magistrate set his arrearage at $8340.93, the hearing officer's failure to give collateral estoppel effect to the magistrate's determination resulted in an incorrect application of the law to the facts of the present case. Therefore, he argues, the claim of DSS, the lien, and the subsequent upholding of the claim by the DSS hearing officer were unreasonable and arbitrary and must be corrected by this court.
DSS argues that the reimbursement claim and lien are not subject to collateral estoppel in the present case because: (1) DSS was not a party to the action before the family support magistrate; and (2) the defendant's statutory liability to the state for reimbursement of AFDC under General Statutes § 17b-93
was not at issue nor necessarily determined in the previous action.
DSS further contends that General Statutes § 46b-160 et seq., the applicable statutory scheme in the proceeding before the family support magistrate, are paternity and support enforcement statutes which base any order for a defendant's payment and arrearage on the defendant's financial ability to pay. DSS argues that there is no indication in the record that the family support magistrate considered Rywolt's statutory liability under General Statutes § 17b-93. In fact, the "Testimony Sheet — Modifications" submitted by Rywolt at the DSS hearing states that the amount of arrearage owed was based on Rywolt's "ability to pay" and not on how much he owes pursuant to General Statutes § 17b-83. (ROR, p. 28.)
DSS argues further that the reimbursement action and the subsequent hearing, brought by DSS were done so pursuant to General Statutes § 17b-93, which authorize the collection of the full amount of AFDC benefits paid on behalf of the defendant's children, notwithstanding the defendant's inability CT Page 2678 to pay, or arrearage determinations by a family support magistrate. Therefore, DSS argues that the issues before the family support magistrate and the DSS hearing officer were separate and distinct issues based on different statutes and facts and, as such, are not subject to collateral estoppel.
In further support of its argument, DSS quotes General Statutes § 17b-93 which states that a parent "shall be liable to repay . . . the full amount of any such aid paid to or in behalfof either parent . . . and his child or children. . . . The state of Connecticut shall have a lien against [any] . . . claim of any kind of the parents . . . in addition to and not in substitutionof its claim, for amounts owing under any order for support ofany court or any family support magistrate, including anyarrearage under any such order. . . ." (Emphasis added.). Therefore argues DSS, General Statutes § 17b-93 permits DSS to seek and obtain reimbursement from parents for all of AFDC benefits awarded to their children notwithstanding any previous arrearage determination by a family support magistrate.
It is found that the record supports the DSS hearing officer's determination that DSS was correct in calculating the amount owed the state by Rywolt for AFDC made to Patton in the amount of $15,260.11, and in placing the lien at issue against any proceeds Rywolt realizes from a pending civil action. This finding is based on the following facts: (1) DSS was not a party to the paternity and support action before the family support magistrate; (2) the issue of Rywolt's statutory liability for reimbursement pursuant to General Statutes § 17b-93 was not litigated nor necessarily determined in the action before the family support magistrate; and (3) absent a collateral estoppel defense, DSS may proceed, as specifically authorized by General Statutes § 17b-93, to seek and obtain full reimbursement for AFDC payments owed the state by Rywolt notwithstanding an arrearage amount determined in another statutory proceeding.
For an issue to be subject to collateral estoppel, the prior action must have been between the same parties functioning in the same capacity. See Dwight Building Co. v. Stamford House WreckingCo., supra, 193 Conn. 301. Although, initially it would seem that the state was a party to both proceedings, for the purpose of collateral estoppel the state is not the same party in distinct proceedings unless it is acting in the same capacity. In the present case, the state was not acting in the same capacity in the two proceedings at issue. In the action before the family CT Page 2679 support magistrate, DHR acted on behalf of the state in a paternity and support enforcement action, while the current action and lien were brought on behalf of the state by DSS to obtain full reimbursement of amounts owed by Rywolt on AFDC benefits paid to Patton.
The state was not acting in the same capacity in the two proceedings in question and therefore was not the same party in each proceeding, and, accordingly, the claim of DSS are not subject to collateral estoppel.
Additionally, collateral estoppel prohibits the relitigation of an issue when that "issue of fact or law [was] actually litigated and determined by a valid and final judgment, and the determination [was] essential to the judgment. . . ." DwightBuilding Co. v. Stamford House Wrecking Co., supra,193 Conn. 301. There is no indication in the record that the issue of Rywolt's statutory liability pursuant to General Statutes § 17b-93
(the matter at issue in the DSS action against Rywolt) was ever at issue or addressed in any manner in the action before the family support magistrate. At issue in that action was the paternity of two children and Rywolt's financial ability to pay child support. At issue in the DSS action against Rywolt was his statutory liability to reimburse the state for AFDC payments. The reimbursement issue was never litigated nor necessarily determined in the action before the family support magistrate. See Giamattei v. Department of Social Services, Superior Court, judicial district of Hartford — New Britain at Hartford, Docket No. 385003 (January 28, 1997, McWeeny, J.). In that case, the court found that the issue of the defendant's AFDC arrearage was not actually litigated before the family support magistrate in the underlying paternity action. Therefore, the court held that the state was not collaterally estopped from placing a lien on the proceeds of the defendant's pending civil law suit in order to obtain reimbursement of all AFDC payments in an amount greater than the plaintiffs arrearage as previously determined by the family support magistrate.
Finally, DSS is authorized by General Statutes § 17b-93 to seek and obtain reimbursement for benefits "paid to or in behalf of either parent, his spouse and his child or children . . . in addition and not in substitution of its claim, for amounts owing under any order for support of any court or any family support magistrate, including any arrearage under such order. . . ." (Emphasis added.). "[T]he liability created by 17-83e is not CT Page 2680 limited to the amount which a father has been ordered to pay periodically in accordance with his financial ability pursuant to some other statutory proceeding. . . . Any difference between the amount of support furnished by the state and the payments received becomes a debt for which the parents remain jointlyliable." (Citation omitted; emphasis added.) Cross v. Wilson,35 Conn. Sup. 628, 633, 403 A.2d 1103 (App. Sess.), cert denied,176 Conn. 762, 392 A.2d 501 (1978). The state's claim against the proceeds of Rywolt's civil suit pursuant to General Statutes § 17b-93 "shall consist of the total assistance repayment for which claim may be made under [AFDC]. The proceeds of such causes of action shall be assignable to the state for payment of the amount due under said Section 17b-93, irrespective of any otherprovision of law." (Emphasis added.) General Statutes § 17b-94; see also Rabatin v. Connecticut Department of Social Services, Superior Court, judicial district of Waterbury, Docket No. 140476 (June 21, 1999, Vertefeuille, J.) (court found that worker's compensation benefits, otherwise exempted by statute from attachment and execution, are subject to a DSS reimbursement lien because General Statutes § 17b-94 applies "irrespective of any other provision of law."). Absent a valid collateral estoppel defense, DSS is authorized by statute to pursue its claim for reimbursement of the total amount of AFDC payments made on behalf of Rywolt's children, minus any contributions Rywolt made toward said amounts.
In conclusion, it is found that DSS was not a party to the paternity and support action before the family support magistrate and that the paternity case did not litigate nor necessarily determine Rywolt's statutory liability for reimbursement pursuant to General Statutes § 17b-93; therefore, collateral estoppel does not apply. As a result of the finding that collateral estoppel does not apply, and because the facts and law support the findings and conclusions of the hearing officer, and since plaintiff has failed to sustain his burden of showing a statutory violation or other error of law in the decision to uphold the lien against the proceeds of plaintiffs pending personal injury cause of action, the court does hereby, in accordance with § 4-183
(j), affirm the decision and dismiss this appeal.